Nott, J.,
delivered the opinion of tbe court:
Tbe material facts of this case are simply these: (1.) That the claimants are tbe owners and lessees of certain land-grant railroads. (2.) That in 1872, Congress; by the Revised Post-Office Act (17 Stat. L., p. 283), authorized the Postmaster-G-eneral to enter into' mail-transportation contracts with railroads, land-grant roads being neither specially included nor excluded from the operation of tbe authority. (3.) That in 1876 the Postmaster-General entered into a number of such contracts with the-claimants in tbe usual form and for the period of four years. (4.) That in 1876, Congress, by statute, reduced the rate of all mail transportation, and made a further deduction in tbe rate of the land-grant roads. (5.) That the claimants protested to-the .Postmaster-General, but continued to perform the contract service and to accept the reduced compensation.
It was lately determined, in the Chicago, Milwaukee and Saint Paul Railroad Case (14 C. Cls. R., 125), that an act of Congress reducing tbe rate of mail transportation may operate as a notice under existing mail-transportation contracts (wherein the government has a right to discontinue the service on notice), but that it cannot operate retroactively. We regard that principle as settled and as controlling the present case if it be applicable to it. There are two matters of fact, however, in which this-case differs from the preceding one; the first of which is that the present claimants’ railway was largely, if not entirely, a land-grant road; the second, that when the reduction was made they protested against it to the Postmaster-General.
For the purpose of determining intelligibly their rights as owners or lessees of a land-grant road, we consider the statute under which they acquired a portion of the public lands as a grant, and themselves as beneficiaries under it, who agreed to-its terms and hold subject to its conditions.
*243 The controlling condition which now binds the claimants as to land-grant roads which they own, or as to land-grant roads which they have rented, is this: “That the United States mail shall be transported over said roads, under the direction of the Post-Office Department, at such price as Congress may by law direct: Provided, That until such price is fixed by law, the Postmaster-G-eneral shall have the power to determine the same.” (Act May 15, 1856, 11 Stat. L., p. 9, § 5; Act June 3, 1856, ib., p. 20, § 5.)
After such a grant had been made and accepted, it was of' course possible for the parties to rescind it, and by a mutual agreement of like character set it aside and substitute a new contract in its stead j but as there is no act of Congress on the one side thus enacting, and as the grantees on the other side have not reconveyed the lands which they acquired by virtue-of the grant, we must consider the original condition as still being the fundamental agreement between the parties, and the-obligation to carry the mails at such price as Congress may by law direct as being always operative upon the claimants. It is-manifest, therefore, that any agreement entered into by the Postmaster-General for the simple service prescribed by the statute, the transportion of the mail, was nothing more than an exercise of his power to determine the rate of compensation “until such price is fixed by law,” and that an agreement made by him for this service for a term of years would be to that extent unauthorized by statute and void. It is likewise manifest that if Congress had authorized the Postmaster-General to-enter into such contracts for this statutory service for a term of years, which is claimed to be the effect of the Revised Post-Office Act, 1872 (17 Stat. L., p. 283, §§ 212, 256, 265), the agreement, as between the claimants and defendants, considered as contracting parties, would be nudum pactum. The claimants were always bound to do that service at such rate as Congress might by law prescribe; and if they entered into an agreement to do it for a term of years, they undertook nothing more than they were already bound to perform, and gave no consideration which would preclude the other contracting party from changing the rate by fixing the price in the manner prescribed by the still operative terms of the grant. If the provision of the Devised Post-Office Act was applicable to land-grant roads, it must be construed to have been an authority to the Postmas *244 ter-General to fix tbe rate of compensation for periods of four years, instead of for shorter or longer periods, but always subject to the original condition of the grant — that Congress might fix the price for the service by law.
But although the condition of the grant that the claimants should carry the mail over their road at such price as Congress might by law direct continued ever obligatory upon the claimants, there were other obligations which they might assume and other services which they might perform than those prescribed by the grant, and these new obligations and services might be the subject of a contract with the Postmaster-General. Such w.as indeed the case. The contracts upon which the suit is brought imposed duties and obligations beyond the mere transportation of the mails. A separate car or apartment, suitably fitted, warmed, and furnished, was to be provided by the claimants; they were to carry the mails to and from the post-office; they were to transport all agents of the department free; they were to act as collecting agents for the department, receiving the quarterly balance of postmasters along the route, transporting the money and paying it over to the department; and they subjected themselves by their contracts to certain penalties and forfeitures which, they claim, were in excess of any liability imposed upon them by the terms of the grant.
These services and obligations, which might have been the subject of a separate contract, the Postmaster-General combined in the contracts in suit with the statutory obligation of carrying the mail, and but one consideration is expressed for both services, the voluntary under the contract and the involuntary under the grant, and the two are so blended together in the contracts that it is impossible for a court to separate them and say how much of the gross consideration was intended to be for the land-grant railway service and how much for the voluntary obligations and services which the claimants bound themselves to assume and perform. Furthermore, Congress, when dealing with this subject in 1876 (and with full knowledge of the fact that such contracts had been made with the land-grant roads), dealt with the contracts as they existed, and simply directed a reduction of the contract rates as a whole, without fixing in express terms the price which should be paid for the mere service of carrying the mails, as to which their power and discretion were unlimited.
*245 It is therefore, we think, apparent that,, so far as these contracts in this suit are involved, the parties stand in precisely the same plight that they would be in if the roads were not land-grant roads and Congress had prescribed this reduction of the contract rate for all railroads. In other words, the claimants were at liberty to throw up their contracts and receive the one month’s pay prescribed in case of discontinuance, and fall back upon the simple sendee of carrying the mail according to the condition of the grant.
But the counsel for the claimants draws a distinction here between this case and that of the Chicago, Milwaukee and Saint Paul Eailroad, inasmuch as it is shown here that the claimants protested against the reduction, while there they apparently acceded to it, and continued to perform without protest.
The answer to this supposed distinction is, we think, twofold. 1st. The protest was given to an agent who had no power to act with discretion in the matter, and whose acts in excess of the statutory notice could not bind his principal. What a man may do by himself he may indeed do by his agent; but it is equally well settled that he cannot be coerced into doing a thing through his agent if he notified the other contracting party that he would not do it, and that his agent had no authority to bind him. Such was the case here. Congress were the principal; the Postmaster-G-eneral was their agent, and notice to him in the face of the statute was not notice that could operate in favor of the claimants or bind the government.
2d. The statute ordering a reduction of the contract rate of compensation (as was held in the Chicago, Milwaukee and Saint Paul Eailroad Case) would operate as a renunciation of the contract, or as a discontinuance of the service under it, unless the other party should assent to the reduction and to that extent enter into a new contract. This was precisely what the claimants did when they continued to perform and accept payment for their services at the reduced rate. The only right which they had when the statute came overriding their contract was to accept the one month’s pay prescribed by the contract as liquidated damages for the discontinuance of the service. (Reeside's Case, 8 Wall., 38; Garfielde's Case, 93 U. S., 242.) No protest could save a right which they did not possess, nor change the terms proffered them for performing if they elected to perform. Having made their election, they are bound by it.
*246 But it appears in this case, as in tbe Chicago, Milwaukee and Saint Paul Railroad Case, that tbe statute directing’ tbe reduction was to a certain extent retroactive, and to that extent tbe claimants should recover.
Tbe judgment of tbe court is that the claimants recover of tbe defendants tbe sum of $876.
In the case of the Winona and Saint Peter Railroad Company v. The United States, which presents substantially tbe same facts as the preceding case, tbe judgment of tbe court is that the .claimants recover of tbe defendants tbe sum of $147.