OPINION.
Scofield, J.,
delivered the opinion of the court:
March 8,1877, the claimant filed in the Navy Department a letter, dated Boston, Marches. 1877, proposing to build “such *175 new boilers as may be required” for tbe iron-clad monitor Dictator from drawings and specifications furnished by the Bureau, at prices stated. March 10, 1877, claimant was notified by letter that the proposal was accepted, with a slight change as to the place of delivery.
March 7, 1877, claimant filed in the Department a second letter, dated Boston, March 5,1877, proposing to build'“such new boilers as may be required” for the steamers Narragansett and Tuscarora, from drawings and specifications furnished by the Bureau, at prices stated therein. .Also a small boiler for the tug-boat Snowdrop, from designs and specifications furnished by the Bureau. He offers to receive in part payment old material at the highest market price. March 7, 1877, claimant was notified by letter that this proposal was accepted.
March 13, 1877, Hon. B. W. Thompson became Secretary of the Navy, and March 16, 1877, gave notice to the claimant to discontinue all work contracted for since March 1, 1877.
No notice was at any time given that boilers were' required for any of these vessels, nor were drawings and specifications ever furnished.
In 1878 boilers were built in the defendants’ navy-yard, at Norfolk, Ya., for the tug-boat Snowdrop. For the Dictator, Narragansett, and Tuscarora, prior to the bringing of this suit, no drawings and specifications were made. From March 1, 1877, to May 1,1880, they were not in commission, and did not require new boilers.
The first question presented for consideration in this case is ■whether the correspondence as-set out in finding II makes a contract binding upon the Government under the provisions of the Act of June 2, 1862. (12 Stat. L., 416); now Bevised Statutes, § § 3744, 3745, 3746, and 3747. The first part of section 3744 provides that—
It shall he the duty of the Secretary of War, of the Secretary of the Navy, and of the Secretary of the Interior to cause and require every contract made hy them, severally, on hehalf of the Government, or hy their officers under them appointed, to mate such contracts, to he reduced to tvritvng and signed hy the contracting parties with their names at the end thereof.
The remainder of this section makes it the duty of the contracting officer to file in the returns office of the Interior Department a copy of the contract, together with all “ bK)s, offers, and proposals.” •'
*176 Section 3745 provides that the contracting officer shall make oath that the paper filed is a true copy of the contract; that it has been honestly made, and that the accompanying papers include all that relate to it. ■
By section 3746 the failure to file copies is made a crime.
Section 3747 makes it the duty of the Secretaries to furnish contracting officers with a printed letter of instructions, and with forms printed in blank, so that “all the instruments may be as nearly uniform as possible.”
This is one of several acts which evince the intention of Congress to place the contracting officers of the Government under the restraints of law. To avoid disputes with contractors, the contracts are to be put in writing. To avoid ambiguities, mistakes, and omissions of detail, and statutory requirements, they are to be drawn up after carefully prepared legal forms, to be furnished by the Secretaries, and when so drawn up to be signed by the contracting parties with their names at the end thereof. That it may be readily known in what liabilities the numerous contracting' officers are involving the Government, sworn copies are to be forthwith filed in one common office.
The English statute, of fraud provides that one class of contracts shall be “put in writing and signed by the parties,” and for another class it provides that “ the agreement of some memorandum or note thereof shall be in writing and signed by the party to be charged therewith.” The language of these statutes has been generally, followed in legislation of this country. To determine what kind or form of writing and signing came within the requirements of this phraseology has been the object of the great number of judicial decisions, some of which have been cited here.
But in the law under consideration, the words “some memorandum or note thereof” are omitted, and the words “with their names at the end thereof ” added. Immediately preceding these added words the statute had already provided all that the English statutes required, to wit, that “ the contract should be in writing and signed by the contracting parties.”
It is plain that some additional requirement is involved in the words “with their names at the end thereof.” They are not repugnant to any other part of the act. They cannot be meaningless. The same idea has been discussed in legislative bodies, and one State at least has required certain contracts “to *177 be signed at the foot.” Congress inserted these words for a purpose, and courts must give them effect. We cannot shave off the language of an act of Congress to bring its meaning within less restricted language, common in statutes of fraud. These additional words cannot mean less than that the contract • shall be so full and complete before signing that it can be signed in whole by both parties. It excludes the idea that oue party may sign one part of the contract and the other party another and leave the courts to arrange a contract by collecting and joining the pieces. That can be done, as has been often held, under the English statute, but not under ours, unless we entirely erase the words “with their names at the end thereof.”
This construction is strengthened by the other provisions of the act before noted, especially by those which require the Secretaries to furnish blank forms in order “that all the instruments may be as nearly uniform as possible,” and the contracting officers to file with the copy of the contracts copies of all “bids, offers, and proposals.”
It is doubtless true that the contractor is not bound to see that the officer obeys all these directions, but he is bound to know that they are in the law and that it does not become him to aid a reckless officer to evade them.
If this is the proper construction of the statute, negotiations, correspondence, proposals, and acceptances, although conducted in writing, but signed only in part by one party and in part by the other, do not constitute the required complete contract signed in whole by both parties. At most they are only preliminary memoranda to be used in drawing a contract so complete that it can be “ signed by the contracting parties with their names at the end thereof.”
In opposition to this construction of the statute the Case of Adams (1 C. Cls. B., 192) and the case of Garfielde v. United States (93 U. S. R., 242) are cited. But these cases were not necessarily ruled by the Act of June 2, 18G2. The accepted proposals, having been made in answer to advertisements soliciting bids, were controlled in the one case by sections 3718 and 3719-of the Bevised Statutes, and in the other by Act of June 8, 1872, ch. 335, §§ 243-248 (17 Stat. L., 313, now Bev. Stat., §§ 3941-3946).
It may be considered settled that so much of section 3744 as, provides that contracts shall be “reduced to writing and signed *178 by the contracting parties with their names at the end thereof” is mandatory, and contracts which do not comply with its requirements are void. (Henderson's Case, 4 C. Cls. R., 75; Clark v. United States, 95 U. S. R., 539.)
In this case a whole and complete contract was not signed by either party. The claimant signed the proposals and the defendants the acceptances. Neither party retained possession of all the original parts. The defendants retained possession of the original proposals and the claimant of the original acceptances. The drawings and specifications which were to become a very important part of the contract were not in writing at the time nor even considered and determined upon.
The retiring Secretary, in the hurry of departure, gave verbal orders that the proposals should be accepted, and left it for his successor, if he saw fit, to draw contracts from these mem-oranda, in conformity to law.
As the appropriation for the current fiscal year was already largely overdrawn, it would be a reflection upon his honesty to suppose that, in violation of Eevised Statutes, section 3679, he intended, by such immature contracts, to further involve the Bureau in debt, or that, by contracts premature as well as immature, he intended to control the discretion of his successor in the expenditure of an appropriation limited to the necessities of the next fiscal year.
It may be here observed, as illustrative of the wisdom of Congress in endeavoring to provide' against involving the Government in large liabilities, through unfinished and uncertain contracts, that these papers contemplated payment in old material in violation of the Eevised Statutes, § 3618, and omitted the provision relative to members of Congress, contained in section 3741. For the same purpose the attention of the court is directed to a small variance between the proposal and the-acceptance relative to boilers for the Dictator. The claimant proposed to deliver the boilers “ alongside ship,” in New York, and the acceptance demanded that they should be delivered “alongside ship or the navy-yard wharf, as may be required.” This seems to to be only a slight modification, but the Department considered it of sufficient importance to make it a condition in the notice of acceptance. To this modification the claimant made no reply. In a suit against the claimant for nonperformance, could he not set up as a defense this unaccepted modification?
*179 As tbe requirements of tbe statute were not complied with, we bold that there was no contract upon wbicb to base a claim for damages, and, as no work was done and no property delivered, there can be no recovery on a quantum meruit.
But if it should be held that these papers constitute valid contracts against the Government, it is not at all clear that they have been broken by the defendants. The claimant’s proposals state that he has “learned that new boilers are required for” certain ships, and then say, “ I will build such new boilers as may be required for the above-named ships,” &c. This language implies conditions as to the requirements of the service, apparently to be settled in the future. (Fenlon’s Case, 17 C. Cls. R., 138.) Whenever the Secretary shall determine (so this language imports) that new boilers are required, claimant will build them on the terms stated. Upon these conditions the proposals appear to have been accepted. In thus accepting, the Secretary passes no present judgment upon the requirements of the Navy. All is prospective. No time is fixed or proposed. The Secretary informs the claimant that his terms are satisfactory and that whenever the Government requires the boilers to be built outside of its own shops, drawings and specifications willbe made and orders given to him. The three ships were not in commission, and for them the Secretary concluded that new boilers were not required. About a year afterward the Secretary decided that the tug-boat Snowdrop required a new boiler and that it was advisable to build it at the Government navy-yard.
This comment upon the language of the proposals is made, not for the purpose of present construction, but by its ambiguity further to illustrate the propriety of the law which refuses to recognize as valid contracts crude and incomplete memo-randa.
It was contended by defendants that so long as plans and specifications had not been selected, consideration of gains prevented was out of the question, for the reason that the discretion reposed in defendants to prescribe plans extended at the least to the selection of a design as expensive to. the contractor as the contract price.
The alleged contract is further objected to because it is said that it is in violation of Revised Statutes, § 3718, which provides *180 “ that all materials of every name and nature for the use of the Navy shall be furnished by contract by the lowest bidder.”
But, having decided the case upon the provisions of section 3744, it is unnecessary to consider other objections.
The decision of the court is that the claimant’s petition be dismissed.