Mr. Justice Hunt
delivered the opinion of the court:
The Court of Claims holds that the proposal on the part of Garfielde, and the acceptance of the proposal by the Department, created a contract of the same force and effect as if a formal contract had been written out and signed by the parties. Many authorities are cited to sustain the proposition. We be *340 lieve it to be sound, and that it should be so held in the present case.
' That court held that the contract alleged by the petitioner was invalid, for the reason that the Postmaster-General exceeded his authority in making .it without the previous publication required by the Act June 8, 1872. (17 Stat. L., p. 313, § 243.)
That act required “ that before making any contract for carrying mail * * * the Postmaster-General shall give public notice * * *; such notice shall describe the route, the time at which the mail is to be made up, the time at which it is to be delivered, and the frequency of the service.”
Among the instructions issued by the authority and official Sanction of the Postmaster-General are the following, which were referred to and proved or admitted by the parties at the trial:
“Special Notice. — All instructions and regulations promulgated by the Postmaster-General, conformable to law, for the guidance of persons employed by the Department, are entitled to the same respect and obedience as acts of Congress.” * *
“Sec. 263. The Postmaster-General may order an increase or extension of service on a route, by allowing therefor a pro-rata increase on the contract-pay. He may change schedules of departures and arrivals in all cases, and particularly to make them conform to connections with railroads, without increase of pay, provided the running-time be not abridged. He may also order an increase of speed, allowing, within the restrictions of the law, a pro-rata increase of pay for the additional stock or carriers, if any. The contractor may, however, in case of increase of speed, relinquish the contract, by giving prompt notice to the Department that he prefers doing so to carrying the order into effect. The Postmaster-General may also discontinue or curtail the service, in whole or in part, in order to place on the route a greater degree of service, or whenever the public interests, in his judgment, shall require such discontinuance or curtailment for any other cause; he allowing, as a full indemnity to. the contractor, one month’s extra pay on the amount of service dispensed with, and a pro-rata compensation for the amount of service retained and continued.”
' “Sec. -267. Bidders should first propose for service strictly according to the advertisement, and then, if they desire, sepa *341 rately for different service; and if the regular bid be the lowest. offered for the advertised service, the other proposition may be, considered.”
“ Sec. 275. The law provides that contracts for the transportation of the mail 'shall be awarded to the lowest bidder tendering’ sufficient guarantees for faithful performance, without other reference to the mode of such transportation than may be necessary to provide for the due celerity, certainty, and security thereof.” * * * * *
The notice in the present ease called for proposals for carrying the mails on route No. 43132, from Portland, Oreg., to Sitka, Alaska. The distance was stated to be 1,400 miles, the duty was required to be performed each way once in each month, in safe and suitable steamboats, by the way of Port Townsend and San Juan. The time of departure and arrival at each terminus was specified, and ten days were allowed for the passage. It was then added, “Proposals invited to begin at Port Townsend, (W. T.,) 500 miles less.”
We are of the opinion that this was a sufficient notice under section 243, (supra,) that proposals were desired for carrying the mail from Port Townsend to Sitka. The rigorous and strained construction which would defeat it, would defeat the reasonable intent of the statute. Bach terminus was given, to wit, Port Townsend and Sitka, as was the route to be followed, to wit, by way of San Juan, and the length of time to be occupied, to wit, ten days for the whole distance, of which this distance bore the proportion of nine to fourteen, and the time of making up and delivery upon the same principle. The steamer should leave Portland on the first day of every month; of the ten days allowed for the passage to Sitka, five-fourteenths would be occupied in reaching Port Townsend and nine-fourteenths would be allowed for the residue. The whole time and the whole number of miles being given, it was a simple arithmetical question of when the steamer would leave Port Townsend and when on its return it would reach that port.
The object of the statute was to secure notice of the intended post-routes, of the service required, and the manner of its performance, that bidders might compete, that favoritism should be prevented, that efficiency and economy in the- service should be obtained. It was not required that papers of this character *342 should be drawn as if they were subject to the criticism or dissection of a demurrer in a court of law.
Accordingly, it appears that this notice for the abridged distance is in conformity to the usages of the Post-Office Department for many years past, proof having been made of nine hundred similar advertisements published by the Postmaster-General. Long practice and constant usage favor the construction we have given to these proposals.
Great aid is also given by the 263d regulation, above recited. It is there provided that the Postmaster-General may, in his discretion, change the schedule of departures and arrivals, without increase of pay, if the running-time be not abridged. Under this authority he has the power to name the precise days of the month on which the steamer of Mr. Garfielde, the claimant, should leave Port Townsend or Sitka, or both of these places. The supposed defects in the advertisement are capable of a remedy, if needed, under this authority.
The damages are regulated by the same section. The claimant states, in his proposal, that he has full knowledge of the laws and regulations of the Department on the subject of mail-transportation. He no doubt knew that this regulation provided that the Postmaster-General could discontinue entirely the service for which he proposed, whenever in his judgment the public interests required it, and that for such discontinuance one month’s pay was to be deemed a full indemnity to the contractor. There was reserved to the Postmaster-General the power to annul the contract when his judgment advised that it should be done, and the compensation to the contractor was specified. An indemnity agreed upon as the amount to be paid for canceling a contract must, we think, afford the measure of damages for illegally refusing to award it.
The judgment of the Court of Claims is reversed, and the case is remitted to that court, that a judgment may be awarded to the appellant for a sum equal to one month’s compensation under the proposal made by him and accepted by the Postmaster-General.