## Wilson's Administrator v. Nolen.

(Decided October 26, 1923.)

### Appeal from Bell Circuit Court.

1. Appeal and Error—Motion for New Trial Unnecessary to Authorize Review where Conclusions of Law and Fact Separated.— Under Civil Code of Practice, section 332, where the court has stated its conclusions of law and fact, and a party properly excepts to the conclusions of law, a motion for new trial, bill of evidence, or bill of exceptions is unnecessary to authorize a review of an error of law in such conclusions.

2. Bills and Notes—Promise to Marry Held Not Sufficient Consideration for Note of Maker Since Deceased.—A note payable one day after date in consideration of mutual promises to marry was executory in its nature, and contemplated the continued existence

of both parties, and, where the consummation of their desires became impossible, because of the death of the promisor, there was a total failure of consideration.

3.   Breach of Marriage Promise—Agreement to Marry with no Time Fixed Means Reasonable Time.—A general agreement to marry with no time fixed is an agreement to marry within a reasonable time.

N. R. PATTERSON for appellant.

JAMES H. JEFFRIES for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

On the 17th day of January, 1920, R. D. Wilson executed his note payable to appellee one day thereafter for $5,000.00 in consideration of their mutual promises to each other, then and theretofore made, to marry.

He retained the actual custody of the instrument, and it remained in his safety deposit box at the bank at all times between that and his death in March, 1920; but the findings of fact hereinafter referred to show there was in truth a constructive delivery of the same to appellee.

In March, 1920, R. D. Wilson died intestate, unmarried and without issue, and thereafter appellant qualified as his administrator.

This is an action by appellee on that note wherein she alleges there was a valuable consideration for the same, and in another paragraph that the consideration therefor was work and labor theretofore performed by her for Wilson, and an additional consideration was that at and before the execution thereof the plaintiff, at the special instance and request of said Wilson, had agreed and promised to marry him, and had been at all times thereafter, until the death of said Wilson, ready, able and willing and desirous of complying with her said promise. There is, however, no averment that the agreement to marry was to be carried out at any particular time or day, nor is there any allegation of failure or refusal upon the part of Wilson to comply with their mutual promise then made to each other, nor that he voluntarily by self-destruction or otherwise placed it out of his power to comply with his agreement.

The answer denied the delivery of the note to the plaintiff; denied the same was executed in consideration of work or labor theretofore performed, and affirmatively averred that the same was wholly without consideration.

By agreement a jury trial was waived and the action tried by the judge of the court, and the plaintiff requested the court at the conclusion of the trial to separate his findings of fact and his conclusions of law. Accordingly the court before entering judgment found the facts to be (1) that the consideration for the execution of the note was that at the time and prior thereto, and continuously thereafter, until the death of Wilson, he and the plaintiff were mutually promised and engaged to marry each other. (2) That while the note was never actually delivered to the plaintiff, Wilson retained the custody thereof with the intention on his part that same should become the property of the plaintiff, and that he would thereafter actually deliver the same to her.

The conclusions of law separately stated are: (1) That the facts recited show a constructive delivery of the note by Wilson to the plaintiff. (2) that the note was based upon a valuable consideration, to-wit, the promise of the plaintiff to marry Wilson, which promise was in existence at and prior to the date of the note, and continued in existence until the death of Wilson.

Thereupon the court entered a judgment for the plaintiff on the note, and the defendant at the time excepted to the findings of fact, the conclusions of law and the judgment of the court, and prosecutes this appeal.

There was no motion for a new trial, nor is there in the transcript any bill of evidence or exceptions, except as stated.

It will be observed that the court in its findings of fact wholly ignored the issue that the consideration for the note was for service theretofore rendered, and we will therefore assume either there was no evidence on this issue or if there was it was unfavorable to the plaintiff; and will therefore treat the findings as having reference to the sole consideration shown by the evidence.

At the outset we are met with the contention that as this is an ordinary action tried by agreement before the judge of the court without a jury, there being no motion and grounds for a new trial, no bill of evidence and no bill of exceptions, the only question before this court is the sufficiency of the pleadings.

We cannot assent to that as a rule of practice under the facts presented by this record.

We are aware of the general rule that this court will not, in the absence of a bill of exceptions or a bill of evidence in an ordinary action showing what occurred upon the trial below, look to anything except the sufficiency of the pleadings. This is necessarily so because the court has nothing before it from which it may determine the correctness of any rulings of the court below on the trial, and will in the absence of such a showing affirm the judg-- ment if the pleadings support it. We are likewise aware of the rule that in an ordinary action where there has been a trial before the judge, if one desires to take advantage on appeal of any ruling made on the trial as to the admission or rejection of evidence, he must point out in his motion and grounds for a new trial, the errors upon which he relies, so that the court may correct its own mistakes and grant a new trial without the necessity of an appeal.

But here we have in the transcript the pleadings, the findings of fact by the court, and the conclusions of law by the court based upon the findings of fact and a speci- fic exception to the conclusions of law. Therefore, accepting the findings of fact as conclusive upon this court, which we do, and recognizing the sufficiency of the pleadings to support the judgment, which we do, still we have before us the question whether the court upon the pleadings and the facts as found erroneously applied the law.

The exception to the conclusions of law directed the attention of the court to the only thing here complained of as effectually as would a motion for a new trial.

Neither a motion for a new trial, a bill of evidence, nor a bill of exceptions would aid this court in any way in determining the single question whether the court upon a given state of the pleadings and a conceded state of the facts properly applied the law.

Section 332 of the Civil Code provides:

"Upon trials of questions of fact by the court, it shall not be necessary for the court to state its finding, except, generally, for the plaintiff or defendant, unless one of the parties request it, with the view of excepting to the decision of the court upon the questions of law involved in the trial; in which case the court shall state in writing the conclusions of fact found, separately from the conclusions of law."

Manifestly the language employed contemplates that a party who desires to except to the decision of the court

on a question of law, may, by requesting a separation of the law and facts, get the record in such condition that he may raise his question of law by an exception to the conclusions of law without the necessity of filing a motion and grounds for a new trial, or any formal bill of exceptions.

In the case of Beeler v. Sandidge, 20 R. 1581, tried by the judge, there was neither a motion for a new trial nor exceptions to the court's conclusions of law, and the court, after quoting the section of the Code referred to, said:

"Upon the trial of this case in the court below there was no request that the court should state separately its conclusions of law and fact; nor were any exceptions taken to its conclusions of law. And in the absence of such exceptions this court has no power to review the errors of law complained of, and as the pleadings authorized the judgment, it must be affirmed."

Clearly the court by inference meant that under the Code provision, although there was no motion for a new trial, if proper exceptions had been taken to the conclusions of law they would nevertheless have been considered by this court on appeal.

In none of the cases cited by the appellee on this question of practice was there a separation of the law and facts, except in the case of Anderson v. DuPree, 82 Ky. 678. In that case there was by the court on its own motion a separation of the law and facts placed in the judgment, and there was merely a general exception to the judgment and no specific exception to the conclusions of law. No motion for a new trial was filed, and the court applied the general rule.

In the case of Albin Company v. Ellinger, 103 Ky. 240, the court held that under the provisions of section 332 of the Civil Code, upon the trial of fact by the court, either party may request the court to state in writing the conclusions of fact found separately from the conclusions of law, but that such request is not required to be made before judgment is entered, but should be made thereafter within the time allowed by law for entering a motion for a new trial; and likewise held that upon such a trial by the judge without a jury a motion for a new trial is necessary to have reviewed on appeal *any error committed by the lower court during the trial,* and in concluding that opinion said:

"We now hold that a request for a separation of law and facts in a case like the one at bar must be made within the time allowed by law for moving for a new trial. A party may also move for a new trial, as well as to make the request for separate findings. He may do either or both. If a separation only be given, as requested, this court will consider the law and the facts as found, and review the correctness of each."

There is no fair interpretation of that holding, except that an exception to the conclusions of law, where there has been a separate finding of fact and conclusions of law, will be considered on appeal, even though there has been no motion and grounds for a new trial. In the case of Prudential Life Ins. Co. v. Orr, 174 Ky. 831, a jury trial was waived in an ordinary action, and there was neither a separation of the law and facts nor a motion for a new trial. The court in that case quoted section 332 of the Civil Code, and said:

"The appellant made no request of the circuit court for separate findings of law and facts, and consequently, no exception was or could have been taken to the decision of the trial court upon the questions of law involved in the trial. Furthermore, there was no motion or grounds for a new trial. Under this state of the record appellee insists that this court can only determine whether the pleadings support the judgment. . . . It follows, therefore, that appellant having failed to except to the trial court's finding of law, it cannot now complain that the court incorrectly decided the law of the case."

Unmistakably the court meant that if there had been an exception to the trial court's conclusions of law, this court would have reviewed it even though there was no motion for a new trial.

A review of these authorities convinces us that under the provisions of section 332 of the Civil Code, where there has been a separation of the law and facts, and a party properly excepts to the conclusions of law found by the court, a motion for a new trial is unnecessary to authorize a review of an error of law.

As we interpret the court's conclusions of law its judgment was primarily based upon the view that the promise of the plaintiff to marry Wilson was at the time and yet is a sufficiently valuable consideration to support the note and uphold the judgment.

That a promise of a woman to marry a man is at the time a valuable consideration is not to be denied; but the question raised here goes far deeper than that. Although the promise at the time is a valuable consideration, yet where the contract between the parties is from its very nature an executory one and contemplates future performance as the consideration, and before the time comes for that consideration to pass, and before it has passed, unforeseen things happen which are not brought about by either of the parties involved, and it thereby becomes impossible for the contract to be performed by either party, then there has come about a state of things not contemplated by either, and which relating back to the original transaction destroys the original consideration, or, as it is sometimes said, brings about a total failure of consideration.

It was not the bare promise of appellee to marry decedent that induced the execution of the note; it was the benefit he expected to realize in the future when that promise was carried out. The contract on its face was executory in its nature; the benefits to be derived by the obligor in the note as its consideration were all to be performed by appellee in the future, and before the time came for their performance, and by the intervening death of Wilson, not superinduced by any act of his, the carrying out of her promise—the real consideration—was made impossible of performance.

In the case of Streshley v. Powell, 12 B. M. 178, Streshley sold to Powell a negro boy for the sum of $700.00 payable in sixty days; the boy was to be immediately delivered to the purchaser, but before the delivery a note for that amount was signed by Powell and a bill of sale executed by Streshley. The negro boy was not present, but Streshley promised to immediately deliver him to Powell. The boy, however, was never delivered, but had evidently run off.

The court in response to the argument that it was *the sale and the execution of the bill of sale* that furnished the consideration for the execution of the note, said:

"Does not this demonstrate that it was not the sale simply, nor the execution of the bill of sale for the absent negro, nor both combined, that moved the appellee to sign the note? Was not the motive which induced him to do so the contemplated immediate delivery of the

negro? Certainly no other conclusion can be drawn from the facts proved in the cause. And Tomlins, in his Law Dictionary, page 393, defines a consideration for a contract to be the 'material cause of the contract, without which it will not be effectual or binding;' he says further that 'as to contracts, a consideration may be defined to be the reason which moved a contracting party to enter into the contract.' Did not the appellee in this case expect an immediate delivery into his possession of the negro boy, and did not this anticipated delivery move him to sign the note? Was not this anticipated delivery of the boy the substance, the essence of the contract on his part? Surely it was. And his delivery not having been realized, there has been, in our opinion, a substantial failure of the consideration of said note.''

In this case as in that it was the culmination of the things desired by Wilson that induced him to sign the note, and not the mere promise of appellee that she would marry him. He looked forward to the happiness her society would bring him, and to the comforts of a home over which she would preside, and to the rearing and training of his children. These were the things that were in his mind and were the things that induced him to execute the note. Manifestly a contract between two people to marry at some time in the future contemplates the continued existence of both such people, and with that contemplation in view, if by any intervening cause for which neither is responsible, the consummation of their desires becomes impossible because of the death of either, then any obligation entered into by either in consideration of that agreement is wholly without consideration.

A general agreement to marry, with no time fixed, is an agreement to marry within a reasonable time; and as there is nothing in the pleadings alleging any default upon the part of Wilson in carrying out his promise, and as the note was executed only about two months before the death of Wilson, it is apparent that the expiration of a reasonable time had not come at the time of his death. Schouler on Marriage, etc., vol. 2, p. 1521.

The agreement between the parties appears to have been that Wilson would pay to her at a time in the future $5,000.00 in consideration of which she at some time in the future, not fixed, would become his wife. In other words, in a reasonable time in the future they were to be married and their whole agreement consummated.

But before the expiration of that reasonable time, without fault upon the part of either, his death made it impossible for the contract to be carried out. It was from its nature such a contract as no one could carry out for him after his death, and his death having occurred at a time when there was no default upon his part, the direct question is presented whether there was a total failure of consideration.

In 3 R. C. L., title Bills and Notes, section 132, page 936, it is said:

"While services to be rendered in the future can furnish no consideration for the giving of a note, and if the payee relies simply upon a contract for future services as furnishing the consideration for the note, he must show a valid, binding contract; yet the payee of such a note may show that the note was given in consideration of future services to be rendered, and that such services were rendered, thus furnishing the consideration. In the intermediate time the obligation of the contract or promise is suspended; for until the performance of the condition of the promisee, there is no consideration and the promise is *nudum pactum;* but on the performance of the condition by the promisee it is clothed with a valid consideration, which relates back to the promise, and then becomes obligatory."

In Story on Contracts (5 ed.), section 605, page 558, it is said:

"Where the consideration of a contract totally fails, that is, when that which was supposed to be a consideration turns out to be none, the contract, as far as the immediate parties are concerned, may be avoided, and the same rule applies as if there never had been any consideration."

In a note to the case of Daniels v. Englehart, 39 L. R. A. (N. S.), failure of consideration is defined to be:

"Failure of consideration, total or partial, occurs when a consideration good and sufficient at the time the agreement was made, by some breach of contract, mistake, or accident, afterwards fails."

In Parsons on Notes and Bills, vol 1, page 203, it is said:

"The entire failure of consideration, after a note is given, is as complete a defense as an original absence of all consideration."

Likewise Story on Promissory Notes (7 ed.), section 187, says:

"The objection to a note may be that there is a total want of consideration to support it, or that there is only a partial want of consideration. In the first case, it goes to the entire validity of the note and avoids it. In the latter case, it affects the note with nullity only *pro tanto*. The same rule applies to cases where there was originally no want of consideration, but there has been a subsequent failure thereof either in whole or in part. For a subsequent failure of the consideration is equally fatal with an original want of consideration, not indeed in all cases, but in many cases."

Page on Contracts (2 ed.), vol. 5, page 4713, classifies subsequent impossibilities—that is, such impossibilities as occur after the original contract—as follows:

"(1) Where the impossibility is created by law. (2) Where the continued existence of something essential to the performance is an implied condition of the contract, and such thing has ceased to exist. (3) Where contracts are made for personal services which can not be performed by the assignee or a personal representative, and the person who has agreed to perform has died, or is prevented from performing by sickness, imprisonment and the like." See also 6 R. C. L., p. 1009.

It is apparent this case comes both within the second and third classifications. Certainly the contract in question was made in contemplation of the continued existence of the life of Wilson, and it is on its face such a contract as could not be performed by his assignee or personal representative.

Without further elaboration, we are impelled to the conclusion that as Wilson died at a time before the contract was to be performed, and his death made its performance wholly impossible, and its performance being the sole consideration for the execution of the note, there was a total failure of consideration and the judgment should have been for the defendant.

The judgment is reversed with directions to grant appappellant a new trial, and for further proceedings consistent herewith.

Whole court sitting.