Campbell, Appellant, *v.* Jefferson, Executrix.

Argued March 19, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*W. B. Adams,* with him *W. H. Martin* and *Pentz & Pentz,* for appellant.—Appellant proceeds on the theory that the transaction, so far as this case is concerned, was

complete, when she, in good faith, promised to marry the maker of the note in consideration of his (in equal good faith) giving her the note: Smith v. Allen, 5 Allen 454; Prisnon v. Daussat, 4 Wash. 199.

*Charles J. Margiotti,* with him *Mitchell & Morris, W. M. Gillespie* and *S. C. Pugliese,* for appellee.—Marriage is a civil contract in Pennsylvania: Stevenson's Est., 272 Pa. 291; Craig's Est., 273 Pa. 530.

It was incumbent on plaintiff to show performance or that she was ready or willing to perform her part of the contract: Williams v. Bentley, 27 Pa. 294; Doughlas v. Hustead, 216 Pa. 292.

A mere expectation on the part of the payee that the maker would marry her is not a sufficient consideration for a note: Raymond v. Sellic, 10 Conn. 480.

Promise to marry is a conditional executory contract: Blakely v. Sousa, 197 Pa. 305; Bland v. Umstead, 23 Pa. 316; Wertz v. Klinger, 25 Pa. Superior Ct. 523; Ward v. Vance, 93 Pa. 499; Scully v. Kirkpatrick, 79 Pa. 324; Sorber v. Masters, 264 Pa. 583, 589; Dixon v. Breon, 22 Pa. Superior Ct. 340.

OPINION BY MR. JUSTICE FRAZER, April 15, 1929:

The pleadings and evidence in this case reveal that Mrs. Olive Campbell, a resident of the Borough of Butler, a widow, at the time 44 years of age, appellant, on or about February 7, 1925, entered into an agreement of marriage with William M. Fairman, a widower, then 89 years old, a citizen of the Borough of Punxsutawney. On the same date Fairman executed and delivered to appellant, in consideration of the engagement referred to, a paper, clearly testamentary in form and substance, as follows:

"When I pass out of this life, I give and direct Thirty Thousand ($30,000) Dollars worth of my bonds now deposited in the Punxsutawney National Bank be given to Mrs. Olive Campbell."

Later, on May 22, 1925, when attacked by serious illness, Fairman went to the residence of Mrs. Sadie C. Taylor, in Punxsutawney, appellant's sister, remaining there until May 27th, and was then removed to Adrian Hospital in Punxsutawney, where he died May 31, 1925. The day following his arrival at the Taylor home, appellant appeared there and remained in the house of her sister until Fairman was removed to the hospital. While both were at the Taylor home, Fairman executed and gave to appellant a promissory note dated May 22, 1925, payable to her order, sixty days after date, saying to Mrs. Taylor, according to her testimony: "I am making the note to her in place of the other paper," referring to the one of February 7, 1925. Eight days later he died at the hospital, the marriage not having been performed. This note forms the basis of the present action against Fairman's estate. At the close of the testimony offered by plaintiff, defendant moved for a nonsuit, which was granted, and on this appeal the only error assigned is the court's refusal to reverse its action. With variation in terms, both parties present that question for consideration as the sole one involved; and the court below concludes that the only question for its determination is whether the promise to marry made February 7, 1925, is, without more, a valid consideration to support the note given May 22, 1925, and finds there was a total failure of consideration. We are of the opinion that on the pleadings and proofs before us the question as set forth by the court covers the precise point in controversy and controls the case and was rightly answered in the negative.

We are at the start left in no doubt as to appellant's contention in the controversy, and the correctness of the finding of the court below is emphasized by the plainly mistaken theory of the case upon which her counsel claims an erroneous conclusion by the court below; they state in their brief of argument that the "transaction between the parties—the engagement of marriage—was

complete when she, in good faith, promised to marry the maker of the note in consideration of his (in equal good faith) giving her the note." This theory however is entirely at variance with the facts as revealed by the evidence. As we understand appellant's contention, expressed in the above quoted words, her promise to marry was coincident with the giving of the note of May 22d. It certainly was not, and in the entire range of plaintiff's evidence we find no assertion to that effect. The fact is undisputed that the engagement of marriage was made and concluded on or before February 7, 1925, more than three months previous to execution of the note of May 22d, of the same year; and if that contract to marry was induced by any consideration, it was the consideration represented by the testamentary paper of the same date, which later was revoked and rendered void, as the evidence establishes, by the declaration of Fairman that he made the promissory note to appellant in lieu of the other paper.

The mistaken theory of appellant is serviceable here, since it at once brings to the front the important question, namely, What possible ground, established by the proofs, can be found upon which to base the claim that the concluded promise of marriage of February 7th was the inducing consideration for the note of May 22d? The law requires the consideration to be valuable to support an executory contract; slight loss however, or inconvenience to the promisee upon his entering into the contract, or like benefit to the promisor, is deemed a valuable consideration: Conmey v. Macfarlane, 97 Pa. 361, 363. It is not denied by appellant, and is correctly declared by the court below, that the contract in question to wed was executory, made in contemplation of the continued existence of the life of Fairman and of the actual consummation by marriage. Inevitably, of course, his death rendered performance of the agreement impossible. Still it is appellant's contention that the engagement, the promise of appellant to marry, consti-

tuted the valuable consideration for the note. It is true, the real consideration of a note may be shown when not apparent on its face: 1 Joyce's Defenses of Commercial Paper, 393. But there are embodied in the obligation here in question no directions or explanations to indicate a consideration, and we search in vain for similar indications in the testimony before us. Lacking these proofs, what other elements of consideration may be evoked? An agreement, such as a promise to marry, will not be deemed to embody a promise which the law itself would not imply; and certainly neither by direct terms nor by implication, is it shown that Fairman gave the note to secure a promise of marriage which he had already secured months before. The agreement was at the time of the making of the note a subsisting contract, and nothing had intervened to end or change it. As the court below states, "nothing appeared to show either that the failure to consummate this marriage was due to any default on either side; namely, nothing to show either that he had requested her to fulfill her engagement, or that she asked him to marry her and he had refused. No breach was proven on either side." And we may add, that at no period had appellant performed service for decedent, incurred expense or sustained loss or inconvenience during the engagement. Any of these happenings would, under proper circumstances, have constituted a good consideration and an inducing cause for the giving of the note: 1 Daniels on Negotiable Instruments, page 259; Helfenstein's Est., 77 Pa. 328; but, as we have stated, none of these eventuated, so far as the record discloses. The position of appellant therefore necessarily narrows down to the single claim that her promise to marry was the inducement for the note.

We have, as the learned judge of the court below sets forth, no Pennsylvania decisions involving the precise situation which here confronts us. In lieu of such decisions he quotes at length from authorities directly in point from other states, which we adopt here. The case

of Blanshan v. Russel et al., 52 N. Y. S. 963, noticed frequently in textbooks, is in most of its essential points similar to the controversy before us. There suit was brought against the estate of a decedent on a promissory note signed by the deceased, the alleged consideration being an earlier promise or engagement to marry entered into by the payee; the court held the promise to marry was not the inducing cause of the execution of the paper. In that case the court said: "The evidence concerning the marriage engagement clearly does not show a valid consideration to support the note. The evidence shows that an engagement to marry existed between them at the time the note was executed, but there is nothing whatever to show that the engagement was induced by the giving of the note. The note was not given in consideration for the engagement, nor was the engagement entered into in consideration of the giving of the note. The betrothal had existed for some time before the note was executed, and the mere existence of such an engagement will not, in itself, support an executory contract to pay...... It is true that the recital 'for value received' in a note imports a consideration, and the burden is upon the defendant to overcome the presumption arising therefrom. But if the plaintiff upon the trial proves that the note was made and delivered for a consideration that the law does not recognize as sufficient to sustain the promise, the burden which rested upon the defendant has been met by the evidence in the case quite as effectively as if it had been introduced by the defendant himself. The trial judge had the right to assume that there was no consideration other than appeared in the evidence before him, and was correct in his conclusion that none sufficient in law could there be found."

That is the situation here. The engagement between appellant and Fairman was an agreement made months previous to the giving of the obligation. It was a subsisting agreement at that date, and no reasonable mind

can assent that the note was executed by Fairman to secure a promise already gained or to renew a promise that remained unbroken. Nor, as we have said, does appellant show that the delay of marriage, for which in fact she was responsible, resulted in loss or inconvenience that might be sufficient to constitute a consideration, and on this point the learned court below emphatically declares: "It was not claimed on the trial that the plaintiff had given up any position she then held or was likely to obtain, or that she made any arrangements to change her abode, or that she had in any way altered her household arrangements, or even that she had announced the proposed marriage and was humiliated by its never having taken place, or indeed any circumstance whatever to show that she had altered her conduct in the slightest degree from the course she would have pursued if the engagement had never been entered into. ...... She seeks to recover the sum of thirty thousand dollars for nothing except a bare naked promise to marry, which, so far as we know, she never made any effort to perform. She does not even aver in her pleadings that she was ready to marry the deceased or had ever offered to do so."

Since we sustain the finding of the learned court below that the evidence does not show a valid consideration to support the note in question, we shall refer only briefly to the aspect of the case noted at length by that court, namely, that the contract to marry, being executory, failed of completion by the death of Fairman, on the legal principle that a contract fails where the continued existence of something essential to the performance is an implied condition of the contract and such thing has ceased to exist: 5 Page on Contracts (2d ed.), page 4713. On this point we may adopt the language of Wilson v. Nolen, 200 Ky. 609, quoted in the opinion of the court below in the present case: "Where the contract between the parties is from its very nature an executory one and contemplates future performance as to the con-

sideration and before the time comes for that consideration to pass, unforeseen things happen which are not brought about by either of the parties involved, and it thereby becomes impossible for the contract to be performed by either party, then there has come about a state of things not contemplated by either and which, relating back to the original transaction, destroys the original consideration or, as it is sometimes said, brings about a total failure of consideration."

Judgment affirmed.