[Civ. No. 18913.  Second Dist., Div. One.  June 27, 1952.]

THE CENTRAL CONTRA COSTA SANITARY DISTRICT,
Appellant, v. NATIONAL SURETY CORPORATION
(a Corporation) et al., Respondents.

John A. Nejedly for Appellant.

Guy Richards Crump, Wood, Crump, Rogers, Arndt & Evans and Tinning & DeLap for Respondents.

DRAPEAU, J.—This cause was tried upon an agreed statement, the controlling facts of which may be summarized as follows:

Plaintiff is a sanitary district duly organized under the Sanitary District Act of 1923. Its resolution No. 57, authorizing publication for bids for a sanitary disposal system, called for one publication of notice inviting bids. This notice was published on September 15, 1947. Three days later, on September 18, when the bids were opened, Tom L. Gogo was found to be the lowest responsible bidder, and on that day by its resolution No. 62, plaintiff accepted Gogo's bid and authorized its officers to execute a contract with him.

The specifications for the work provided that bids should be made on forms furnished by plaintiff and should be accompanied by check or bidder's bond in an amount aggregating 10 per cent of the bid. It was also provided that such check or bond should be given as a guarantee that the bidder would enter into a contract within 10 days after notice of acceptance of his bid by plaintiff, and that the check or bond be declared forfeited in the event the bidder refused or neglected to enter into the contract within the time specified.

Mr. Gogo's bid in the sum of $428,769 was presented to plaintiff on September 18, 1947, accompanied by a bid bond of the defendant surety company in the penal sum of $65,000, which was conditioned as follows:

"Now, Therefore, The Condition of the Above Obligation Is Such, that if the said *principal shall execute a contract and give bond for the faithful performance thereof* after being notified in writing of the award of such contract to principal . . . then this obligation shall be void; otherwise it shall remain in full force and effect." (Emphasis added.)

On September 19, 1947, plaintiff mailed to Mr. Gogo the notice of award and copies of the contract for execution. Mr. Gogo received these papers on the morning of September 22, 1947. In the evening of that day he died, without having signed the contract and without having executed or furnished any labor, material or faithful performance bond. At no time did he refuse to execute the contract. In this connection it was stipulated that by the terms of the contract, Mr. Gogo had 10 days in which to execute it. After glancing at the papers, he gave them to his bookkeeper and said: "I have got several days to sign this and I am not going to worry about it any more this afternoon; I will take it up in time"; and he went out to take his third degree in Masonry, and while there, he died.

Zora Gogo, widow of decedent, was appointed special administratrix of his estate on September 25, 1947, and on October 20, 1947, general letters of administration issued to her.

No demand was ever made upon the administratrix or other representative of the estate to execute the contract or to perform the contemplated work.

On October 23, plaintiff by its resolution No. 73 issued another call for bids for the same work covered by the award to Gogo; and on that day by resolution No. 74, it declared Gogo's bid bond forfeited and authorized the institution of this action.

Pursuant to the new call for bids, plaintiff received, and on November 13, 1947, opened several bids, the lowest of which was that of Stolte, Inc., for the sum of $486,036.

The difference between Stolte's bid and that of Mr. Gogo was $57,267. The instant action seeks recovery of that sum.

Among other things, the trial court found that "The execution of the formal contract by Tom L. Gogo was pre-

vented by an irresistible, superhuman cause, namely, the death of Tom L. Gogo before the formal contract was or could be executed.''

The court then concluded as follows:

(a) Plaintiff was not entitled to take anything by the instant action;

(b) ''The signing of a formal performance contract by Tom L. Gogo, following the award of the contract to him, was a purely personal performance act which could not be, and which it was not contemplated or intended by plaintiff or Tom L. Gogo should be, performed by any one other than said Tom L. Gogo personally.''

(c) ''The death of Tom L. Gogo before the expiration of the 10-day period within which he could sign the performance contract operated to discharge both parties from the obligation of executing the same. It also operated to discharge the estate of Tom L. Gogo and his personal representative from any obligation by reason of his failure to sign the formal contract, and to discharge defendant National Surety Corporation on its bid or proposal bond.''

(d) ''The bid or proposal executed by Tom L. Gogo, and the award of the contract to him resulted merely in a contract by which he and plaintiff became bound to execute a formal contract for the performance of the work contemplated by the bid or proposal and the award; and until and unless such formal contract was executed there was no obligation on the part of Tom L. Gogo or his personal representative, to perform the work contemplated by the bid or proposal or the award of the contract to him.''

From the judgment which followed in favor of defendants, plaintiff appeals.

On this appeal, appellant presents the following propositions:

''1. The contract which was entered into at the acceptance of the bid and subsequent notice of award to Gogo was a contract for the construction of sewers, and was not merely a contract to enter into a written contract.

''2. The contract was not in the nature of a personal service contract and therefore death did not discharge the parties of their obligations thereunder.

''3. The forfeiture of the bond is within the principles as set forth by the Supreme Court and is therefore not within the common law ruling against forfeitures.

"4. Assuming but not conceding that Gogo as principal was discharged, the surety nevertheless should be held on its obligation."

█ Appellant asserts that the question posed by its first point "is conclusively determined by *United States* v. *Purcell Envelope Co.*, 249 U.S. 313 [39 S.Ct. 300, 63 L.Ed. 620]," in which the court relied on *Garfielde* v. *United States,* 93 U.S. 242 [23 L.Ed. 779].

In the Purcell case, the envelope company was the successful bidder under a advertisement calling for bids to supply the postoffice department with stamped envelopes and newspaper wrappers for a four-year term. A contract was drawn and *signed* by the envelope company, but due to a change in postmaster-generals, the company was notified that its contract was cancelled. In the action brought for damages for breach of contract, the court based its decision on the Garfielde case, and held that a contract was consummated by the acceptance of the bid. (Emphasis added.)

In the Garfielde case, pursuant to an invitation of the postmaster-general, Garfielde bid to convey the mails between Port Townsend and Sitka, Alaska, for a certain sum "in safe and suitable steamboats, with celerity, certainty and security." His bid was accepted, but before a formal contract could be prepared, the postmaster-general awarded the contract to another firm. There the court held that "the proposal on the part of Garfielde, and the acceptance of the proposal by the department created a contract of the same force and effect as if a formal contract had been written out and signed by the parties."

These two cases were analyzed in *Palo & Dodini* v. *City of Oakland,* 79 Cal.App.2d 739, 742 [180 P.2d 764], where the court stated in referring to the Garfielde case (93 U.S. 242 [23 L.Ed. 779]): "Practically, what the case holds is that when a bid is accepted, the acceptor is bound by that acceptance and such a contractual relationship immediately comes into being between the bidder and acceptor that the latter cannot withdraw without being liable under the terms of that contract." And with respect to the Purcell case (249 U.S. 313 [63 L.Ed. 620]), said: "It will be noted that again here the court is holding the Government to its acceptance of the bid and is referring only to the obligation of the acceptor."

Continuing on page 743, the court in the cited case says:

"In none of the cases cited by plaintiffs was there a situation where the bidder had refused to sign up or to proceed with his contract, or to put up the required bond; nor where a forfeit of his guarantee had been declared. They were either situations in which the acceptor was trying to get out of his bargain, or the successful bidder was trying to enforce conditions not contemplated in the original bid.

"In *State* v. *Howell*, 3 Boyce (26 Del.) 387 [84 A. 871], the distinction between the situation cited by plaintiffs and the case at bar is shown. There the court refers to the rule above mentioned and holds that that rule does not apply where a deposit is required to be made to guarantee the entry into a contract by the successful bidder, for, says the court (p. 876 [84 A.] : 'The provision in the ordinance requiring that the bidder shall furnish a certified check for two hundred dollars to guarantee the execution of the contract *could have no other purpose or meaning if a written contract was not required.* It will be observed that such check is not demanded to guarantee the *performance* of the contract. A bond must be given for that purpose. The expressed purpose of the check is to secure the *execution* of the contract.' (First emphasis added.)"

The specifications for construction of main trunk sewer promulgated by appellant district provided, with reference to the cashier's check or bidder's bond to accompany the proposal, as follows:

"Said check or bond shall be a guarantee that the bidder, if awarded the work, will enter into a contract within ten (10) days after receiving notice of said award. In case of refusal or failure to enter into said contract, the *check or bond*, as the case may be, *shall be forfeited* to the Central Contra Costa Sanitary District, the proceeds therefrom being hereby agreed upon *as liquidated damages* to the said District *on account of the delay in the execution of the contract and required bonds* and the performance of the work thereunder, and the necessity of accepting a higher or less desirable proposal resulting from such failure or refusal to execute the contract and bonds as required. Upon the execution of the contract and the approval on behalf of the Central Contra Costa Sanitary District of the accompanying bonds, all certified checks that accompanied proposals, will be returned each to its maker." (Emphasis added.)

These specifications also provided that "The bidder to whom award is made shall execute a written contract with the Sanitary District within ten (10) days after notice of the award has been sent by mail to him at the address given in his proposal."

When he signed the contract, the successful bidder was required to furnish (1) a bond equal to 50 per cent of the amount of the contract for payment of just claims for materials, labor and subcontractors employed on the job; and (2) a bond in an amount equal to 100 per cent of the contract as surety for the faithful performance of the contract.

The proposal or bid signed by Mr. Gogo bound him "to execute in accordance with such award, *a contract with necessary bonds*, of which this proposal, the notice inviting proposals and the plans and specifications adopted August 7, 1947 and September 11, 1947, shall be a part. . . ." The proposal also provided for: (1) commencement of the work within 10 days after execution of the contract on behalf of the District and the receipt of a notice from it to proceed with the work; and (2) completion of the work on or before the expiration of 270 days after said notification.

It is quite clear that the execution of a contract for construction of the proposed sanitary system was contemplated and that the proposal and award were only preliminary steps leading thereto.

As hereinbefore stated, appellant also urges that "The contract was not in the nature of a personal service contract and therefore death did not discharge the parties from their obligations thereunder."

██ The general rule as to the effect of death upon contractual obligations is stated in 8 American Jurisprudence 732, section 63, to wit:

"Furthermore, the obligor is excused from performing the conditions stated where it appears that performance is rendered impossible by act of God, except, of course, where such act is reasonably within the contemplation of the parties, or where performance is made impossible by the law or by act of the obligee. Accordingly, the death of the obligor excuses nonperformance where the bond calls for personal services on his part."

██ And "Ordinarily, a building contract is not to be brought within that class of contracts which are deemed to have been entered into because of the personal skill or taste of the persons who are to perform them. (Citing authori-

ties.) It is otherwise, of course, where it is made to appear, as remarked by Lord Denman, that the 'character, credit and substance of the party' contracted with was an inducement to the contract. A building contract may, from the character and the kind of work to be performed, properly fall within the rule of 'personal performance acts.' " . *Estate of Burke*, 198 Cal. 163, 167 [244 P. 340, 44 A.L.R. 1341].

■ The record here supports the view that the parties contemplated not only that the contract following the award should be executed by the successful bidder, but also that he alone should perform it.

Paragraph 11 of the specifications provides: "The Sanitary District Board will award the contract to the lowest responsible bidder complying with other instructions and with the provisions of the advertised Notice Inviting Sealed proposals. . . . The competency and responsibility of bidders as evidenced by the information accompanying the proposals, which will be subject to verification, will be considered in making the award."

Said specifications also provide that "The Contractor shall not assign, transfer, convey or otherwise dispose of the contract, or his right, title or interest therein, or his power to execute such contract, to any other person, firm or corporation without previous consent in writing of the Sanitary Board of the Central Contra Costa Sanitary District."

The contract which Mr. Gogo agreed to execute if the award was made to him provided: "Fourth: No interest in this agreement shall be transferred by the Contractor to any other party, and any such transfer shall cause annulment of this contract, so far as the Owner is concerned."

The Notice Inviting Bids contained the following recital: "Each bidder shall submit with his bid on the form provided the name and address of each subcontractor including the principal suppliers of materials, and the portion of the work which each subcontractor will do. *If the contractor fails to name the subcontractors in his proposal he shall be deemed to have agreed to perform such portion of the work himself and shall not be permitted to subcontract said portion of work without previous written permission of the Sanitary District Board.*" (Emphasis added.)

Reference to Exhibit D attached to the complaint herein, being a copy of Mr. Gogo's proposal, discloses that no subcontractors are named therein. Hence, if he had survived and executed the contract, he could have subcontracted no

portion of the work required thereunder without the consent of the District Board.

Appellant finally suggests that respondent surety should be held, even though the contractor may be personally discharged.

The language used in *Petrovich* v. *City of Arcadia*, 36 Cal. 2d 78, 82 [222 P.2d 231], conclusively disposes of this argument:

"Thus in cases such as this the Legislature has now made mandatory a deposit of security and forfeiture when a successful bidder *has inexcusably* refused to execute the contract." (Emphasis added.)

In the instant cause, death of the contractor excused the execution and performance of the contract, and this in turn discharged the surety.

For the reasons stated, the judgment is affirmed.

White, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 21, 1952. Traynor, J., and Spence, J., were of the opinion that the petition should be granted.