[S. F. No. 20008.   In Bank.   Dec. 18, 1959.]

SAM GOLD et al., as Executors, etc., Appellants, v. THE SALEM LUTHERAN HOME ASSOCIATION OF THE BAY CITIES (a Nonprofit Corporation), Respondent.

Rodney G. Commons and Wayne M. Hooper for Appellants.

Alfred Nelson for Respondent.

McCOMB, J.—Defendant is a nonprofit corporation which maintains a licensed home for the aged. Applicants are admitted for a trial period of two months. At the end of this period, or earlier if defendant's board of directors consents, a contract may be executed under which defendant becomes obligated to provide a home for the applicant for the remainder of his life. For such life care contract the applicant pays a lump sum, determined by reference to life expectancy tables.

Plaintiffs are executors of the will of Nicholas Chouvaldjy. Mr. Chouvaldjy, 84 years of age, applied for admission to the home and was accepted on a trial basis. He entered August 1, 1956, at which time he paid $130 for his care for the month of August. On August 31, 1956, he paid a like amount for the month of September.

On September 10, 1956, the directors by motion duly accepted Mr. Chouvaldjy's application for permanent residence and directed that a life care contract be granted upon payment of $8,500.

The contract was drawn by defendant and dated October 1, 1956. Mr. Chouvaldjy signed it September 25, 1956, and at the same time delivered to defendant a cashier's check for $8,500. On the same afternoon or the next morning the authorized officers of defendant signed the contract, and Mr. Chouvaldjy was notified that a signed copy was available for him in the office. The contract was thus executed and in force as of September 26, 1956.

Mr. Chouvaldjy suffered a stroke on September 27, 1956, and died on September 28, 1956.

Plaintiff executors brought this action to recover the payment of $8,500. After trial before the court without a jury, judgment was entered in favor of defendant, and plaintiffs appeal.

Question: *Since performance of the contract was not to commence until October 1, 1956, and Mr. Chouvaldjy died before performance was to commence, (a) was there a failure of consideration for the contract, or (b) was the doctrine of frustration applicable?*

*No.* ■ (a) A life care contract is not subject to rescission or cancellation, or to recovery back of the amount paid therefor, because the beneficiary dies before performance of the

contract is to commence. Defendant's promise to furnish food, lodging, and care to decedent "for the remainder of his life" constituted consideration for the agreement, and the fact that decedent died before performance of the contract was to commence did not give his estate the right to recover the amount paid under the agreement on the ground that there was a failure of consideration. (*Coyne* v. *Pacific Mut. Life Ins. Co.*, 8 Cal.App.2d 104, 108 [3] [47 P.2d 1079] [hearing denied by the Supreme Court] ; *Rishel* v. *Pacific Mut. Life Ins. Co. of California*, 78 F.2d 881, 883 [5, 6]; *American State Bank* v. *National Life Ins. Co.*, 297 Ill.App. 137 [17 N.E.2d 256, 261 et seq.] ; *Dalton* v. *Florence Home for the Aged*, 154 Neb. 735 [49 N.W.2d 595, 597 [1, 4], 599] ; *Curtis* v. *New York Life Ins. Co.*, 217 Mass. 47 [104 N.E. 553, 555, Ann.Cas. 1915C 945] ; *cf.* 131 A.L.R. (1941) 439.)

(b)   The doctrine of frustration is not applicable to the facts in the present case, for these reasons:

■■■   (1) Frustration is no defense if it was reasonably foreseeable. The burden of proving that the risk of the frustrating event was not reasonably foreseeable rests with the party seeking to excuse performance of a contractual obligation. [3] It is settled that if parties have contracted with reference to contemplated risks, they may not invoke the doctrine of frustration to escape the obligations. (*Lloyd* v. *Murphy,* 25 Cal.2d 48, 54 [4], 55 [6] [153 P.2d 47] ; *Gillespie* v. *Ormsby,* 126 Cal.App.2d 513, 526 [5] [272 P.2d 949] [hearing denied by the Supreme Court] ; *Glens Falls Indem. Co.* v. *Perscallo,* 96 Cal.App.2d 799, 802 [2] [216 P.2d 567] ; *McCulloch* v. *Liguori,* 88 Cal.App.2d 366, 372 [5] [199 P.2d 25] [hearing denied by the Supreme Court].)

■■■   (2) The party who claims a frustration must show that he is harmed thereby. (*Dorn* v. *Goetz,* 85 Cal.App.2d 407, 415 [7] [193 P.2d 121].)

■■■   On the question of assumption of risk and the foreseeableness of death, the following statement in *Rishel* v. *Pacific Mutual Life Ins. Co. of California, supra,* 78 F.2d 881, 883 [5, 6], is here applicable: ". . . contracts must be read in the light of the knowledge of all mankind, that death may come tomorrow." (*Cf Coyne* v. *Pacific Mut. Life Ins. Co., supra,* at 108 [3].)

■■■   That death may at any unexpected time overcome a man of decedent's age, 84 years, is by common observation readily classified as "reasonably foreseeable." In the present case each party to the contract had clearly assumed the risk

of variation of the life span from that predicted by the mortality tables. Therefore, the doctrine of frustration is not applicable here. (*Cf. Coyne* v. *Pacific Mut. Life Ins. Co., supra,* at 109.)

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., Spence J., and White, J., concurred.

PETERS, J.—I dissent. The majority opinion permits the Home to retain money received by it for a prospective life membership in a situation where the prospective life member died before the commencement date of the relationship, that is, on the date of death the legal relationship between the contracting parties had not yet commenced. The reasoning employed by the majority in reaching such an unjust result is based on a major fallacy.

Decedent was not a life member of the Home on the date of his death. His only status on that date was that of a probationary guest, fully paid up until October 1, 1956. The contract entered into between decedent and the Home on September 26, 1956, provided that decedent would become a life member—an annuitant—on October 1, 1956. The annuity investment was not to commence until that date. The contract was therefore subject to an implied condition that decedent be able to become a life member on the date that his annuitant status was to begin. This condition failed. Death prevented effectuation of the contemplated relationship. Hence the Home is not entitled to retain the consideration received. The case is this simple.

The majority assume that an annuity relationship already existed between the parties on the date of decedent's death. Such assumption is contrary to the law and facts. Unlike *Coyne* v. *Pacific Mut. Life Ins. Co.,* 8 Cal.App.2d 104 [47 P.2d 1079], decedent did not make an investment on September 26th which was to begin earning interest from that date, the first annuity "payment" to be received on October 1st. Decedent's investment could not commence until he actually became a life member. Until that time he was only a prepaid guest, a status which carried with it no assumption of the risks inherent in an annuity relationship. Since decedent was not alive on the date he was to become an annuitant he could not possibly have acquired this status.

The testimony of the Home's officers shows that it was the

intent of the board that decedent should not become a life member until October 1st, the date inserted into the contract by the Home's manager. Mr. Swanson, secretary of the board of directors in 1956, testified: "We meet monthly, so at the next meeting he [the manager] said that his [decedent's] probation period *would expire,* oh, I think the 30th or 31st, and since the Board would not meet until after that, he made the recommendation that *at the expiration of his probation* that he [sic] grant him a life term contract—which is normal procedure with the Board. . . ." (Emphasis added.) Thus, the board clearly understood and intended that decedent would become a life member only upon the expiration of his probationary period. The contract was voted upon and executed prior to that date, according to Mr. Swanson, merely to prevent a gap between probation and membership status, because the board met only once a month.

It should also be pointed out that the Home's by-laws provide: "If the Board of Directors approve the application, the applicant shall be received into the Home as a guest for a trial period of two months on such terms as the Board of Directors may determine. At the expiration of two months, the Board may decline to receive the applicant permanently or the latter may withdraw. The Board may in exceptional cases admit a guest permanently without any trial period."

This by-law requires a two-month probationary period before membership status is acquired in all but exceptional cases. No exceptional circumstances existed here. Mr. Swanson testified that the board members did not know decedent personally, had no knowledge of his activities, and merely adopted the recommendation of the manager that decedent's application be accepted. The rules of the Home thus prevented the Home from entering into an annuity relationship with decedent prior to October 1st.

It cannot be suggested that execution of the contract terminated the probationary period, initiating membership status on that date. As indicated, the board had no power to terminate the probation prematurely in the absence of exceptional circumstances. Furthermore, decedent was not given any refund on the fee paid for board and room for the probationary period. The record discloses that decedent inquired about a refund and was told that he was not entitled to it. From this evidence it must be concluded that the Home's manager considered the probationary period, for which decedent had paid, to still be in effect despite execution of the contract.

For these reasons it should be held that the parties did not enter into an annuity relationship on September 26th. They entered into a contract to commence an annuity relationship at a later date. Until the inception of this relationship the contract remained subject to the normal contract requirement that performance be possible at the time it was to be rendered. Performance will be excused if, at the time performance is due, one party to a personal contract is dead. Restitution must be made if the consideration has already been paid. (6 Williston, Contracts, § 1937; 6 Corbin, Contracts, §§ 1334, 1368.)

It is hornbook law that when a contract is aimed at creating a personal relationship between the parties the contract is subject to the condition that it be possible to establish this relationship at the specified time. This is true even though the contract is of a type which is not generally considered personal if the particular contract contemplated a future personal relationship. (*Central Contra Costa etc. Dist.* v. *National Surety Corp.*, 112 Cal.App.2d 61 [246 P.2d 150].)

Courts have held that an antenuptial contract is subject to an implied condition that both parties be alive at the intended date of marriage. The contract, though binding at and from the time of execution, contemplates a particular personal relationship and is discharged if death prevents either party from entering into that relationship. (*In re Roy's Estate,* 278 Mich. 6 [270 N.W. 196]; *Campbell* v. *Jefferson,* 296 Pa. 368 [145 A. 912, 63 A.L.R. 1180]; *Wilson's Adm'r* v. *Nolen,* 200 Ky. 609 [255 S.W. 267, 34 A.L.R. 80].) Similarly, a doctor must return an advance fee if the patient, through no fault of his own, is incapable of accepting the services on the day of performance. (*Bucklin* v. *Morton,* 105 Misc. 46 [172 N.Y.S. 344].)

The case at bar is clearly analogous. The purpose contemplated by both parties was the creation—and the maintenance —of a relationship. All contractual duties were discharged when fortuitous events prevented the creation of that relationship.

It is argued that since the Home's performance would not have been discharged had the stroke merely disabled decedent, he cannot be discharged by death. But this contention overlooks the fact that, had decedent remained alive on October 1st, commencement of the relationship would have been *possible.* Had the prospective benedicts in the above-cited cases become handicapped they and their prospective wives would have

remained bound so long as the relationship was still possible. But the law does not permit a party to retain consideration paid under a contract when the object of that contract is a personal relationship which is precluded by the death of the other party.

Failure of the implied condition of possibility discharged decedent's contractual obligations. His estate was entitled to restitution of the consideration paid. I would reverse the judgment of the trial court.

Appellants' petition for a rehearing was denied January 13, 1960. Peters, J., was of the opinion that the petition should be granted.