Filed 9/27/22  Bush v. Cardinale CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

MARY MARGARET BUSH,

     Plaintiff and Respondent,

          v.

NOREEN CARDINALE,

     Defendant;

PHYLLIS VOISENAT,

     Objector and Appellant.

A158757

(Alameda County Super. Ct. No. RG15755192)

In this litigation between plaintiff Mary Margaret Bush (an attorney) and defendant Noreen Cardinale (Bush's former client), the trial court imposed $2,000 in sanctions against Cardinale's attorney, Phyllis Voisenat, for filing a second amended cross-complaint without first complying with court-ordered preconditions for doing so.  Voisenat appeals, arguing principally that the court violated her due process rights in awarding sanctions.  In response, Bush argues this court lacks jurisdiction to consider this appeal because we dismissed a prior appeal of the same sanctions order; Bush also contends the award is proper on the merits.  We conclude the appeal is properly before us, but we reject Voisenat's challenges to the sanctions order.  We therefore affirm.

1

# I. BACKGROUND[1]

## A. *The Prior Litigation and Bush's Representation of Cardinale*

In earlier litigation brought by Cardinale against defendants who are not involved in the present case (the "Miller defendants" and the "Knapp defendants"), Cardinale was represented by attorney Martha Caron and, for a time, by Bush as well. (*Bush v. Cardinale*, *supra*, 2021 Cal.App.Unpub. LEXIS 5235, at pp. *1–*3.) From October 2009 to early 2012, Caron and Bush represented Cardinale on a contingent-fee basis. (*Id.* at p. *2.) "A written agreement dated October 2009 and signed by Cardinale, Caron, and Bush (the 2009 contingency agreement) memorialized this arrangement and specified the percentages of any recovery from the underlying litigation and judgment-collection efforts that would be paid to each of the parties to the agreement." (*Ibid.*) "Bush withdrew as Cardinale's counsel in or about January 2012. Caron continued to represent Cardinale." (*Ibid.*) Cardinale later entered into written settlement agreements with the Miller and Knapp defendants. (*Id.* at pp. *2–*3.)

## B. *The Present Action—Bush's Complaints, Cardinale's Initial Cross-complaints, and the Court's Order Granting Judgment on the Pleadings*

Bush filed the present action against Cardinale and Caron in January 2015. (*Bush v. Cardinale*, *supra*, 2021 Cal.App.Unpub.LEXIS 5235, at p. *3.) In her initial 2015 complaint and in her operative complaints at trial (a first amended complaint and a supplemental complaint, both filed in 2017), Bush alleges that, under the 2009 contingency agreement, she is entitled to a portion of the funds received by Cardinale from the Miller and

---

[1] We discussed the background of this litigation in our unpublished opinion in a related appeal. (*Bush v. Cardinale* (Aug. 13, 2021, A159689) [2021 Cal.App.Unpub.LEXIS 5235, *1–*5].)

Knapp defendants. (See *ibid.*) Bush alleges Cardinale and Caron did not distribute any of those funds to Bush. (*Ibid.*) "Bush's complaints include causes of action for breach of the 2009 contingency agreement and for conversion, as well as (against Caron only) claims for interference with contract and interference with prospective economic advantage." (*Id.* at pp. *3–*4; see *id.* at p. *4, fn. 3.)

Beginning shortly after Bush's filing of this action in early 2015, Cardinale (who was initially proceeding in propria persona) filed a series of cross-complaints against Bush. First, in March 2015, Cardinale filed a cross-complaint against Bush for breach of contract. Cardinale alleged that, when Bush withdrew as Cardinale's counsel in early 2012, she abandoned Cardinale and breached her duties under the 2009 contingency agreement.

Bush demurred to the cross-complaint, and on June 4, 2015, the court sustained the demurrer with leave to amend, ruling that Cardinale's claim was barred by the applicable statute of limitations. Although granting leave for Cardinale to file a first amended cross-complaint, the court specified in its order that Cardinale "may not include in the First Amended Cross-Complaint any causes of action that are not asserted in the initial [cross-complaint], except that she may include a claim of Setoff pursuant to [Code of Civil Procedure[2] section] 431.70."

On June 26, 2015, Cardinale (still representing herself) filed a first amended cross-complaint for breach of contract. The first amended cross-complaint included two causes of action (denominated as claims for setoff), both based on Bush's alleged breach of the 2009 contingency agreement. Bush answered the first amended cross-complaint in July 2015.

In May 2016, attorney Voisenat substituted in as counsel for Cardinale.

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

In September 2016, Bush filed a motion for judgment on the pleadings, challenging Cardinale's first amended cross-complaint; Bush again relied in part on the statute of limitations. Cardinale (now represented by Voisenat) opposed the motion, arguing in her opposition brief that discovery had revealed additional facts and legal theories that she wished to assert by a further amended cross-complaint. Among other things, Cardinale asked that the court grant her leave to amend to "add a claim for malpractice and breach of fiduciary duty" for Bush's allegedly wrongful assertion of a lien claim in 2014, and to add claims for fraud and negligent misrepresentation based on statements and omissions by Bush that allegedly induced Cardinale to agree to pay Bush a contingency fee.

On October 27, 2016 (after holding a hearing the previous day), the court entered an order granting Bush's motion for judgment on the pleadings as to Cardinale's first amended cross-complaint. The court's order stated the motion was "granted with leave to amend" and that a second amended cross-complaint was to be filed within a specified time period. But as to the content of a second amended cross-complaint, the court's order stated in two places that Cardinale was not to include any new claims without first filing a motion for leave to do so.

First, the court denied the request Cardinale had made in her opposition brief for leave to add new claims. The court stated: "The request made by [Cardinale] for leave to file a [second amended cross-complaint] is DENIED WITHOUT PREJUDICE. [Cardinale] may not request leave to plead new matter in her opposition to the Motion for Judgment on the Pleadings. [Cardinale] is required to file a Motion for Leave to Amend pursuant to [section 473, subdivision (a)(1)]." Again, in the next paragraph of the order, after setting the time limit for filing a second amended cross-

4

complaint, the court stated:  "[Cardinale] may not include any new claims or add any new parties in her Second Amended Cross-Complaint without first obtaining leave of court to assert them pursuant to [section 473, subdivision (a)(1)].  [Citations.]"

### C. *The Second Amended Cross-complaint*

In early December 2016, Voisenat, on Cardinale's behalf, signed and filed a second amended cross-complaint (SACC), without first filing a motion for leave to assert new claims.  The SACC did not include the claims for breach of contract (or setoff based on breach of contract) that had appeared in the earlier cross-complaints.  Instead, the SACC set forth three causes of action that Cardinale had not asserted earlier, denominated "set off for fraud and deceit," "set off—negligent misrepresentation," and "set off—breach of fiduciary duty."  These claims alleged in part that Bush made false statements that induced Cardinale to enter the 2009 contingency agreement, and that Bush acted wrongfully in asserting a 2014 lien to enforce her claim for attorney fees.  As to remedies, the SACC sought a "set off" of compensatory and punitive damages; the SACC also requested attorney fees and costs and an order that Bush disgorge any amount recovered from any other party to the action.

In January and February 2017, Bush responded to the SACC by filing (1) a motion to strike the SACC, (2) a demurrer, and (3) a motion for sanctions (which we discuss further in pt. I.D., *post*).  The motion to strike argued in part that inclusion of new causes of action in the SACC without filing a motion for leave to do so violated the court's October 27, 2016 order granting judgment on the pleadings.  In May 2017, after holding a hearing, the court granted the motion and struck the SACC.

In its order striking the SACC, the court stated:  "Attorney for Cross-Complainant Cardinale was advised in the Court's order of October 27, 2016

5

that she could not add any new matter in the proposed Second Amended Cross-Complaint without filing the required motion under [section 473, subdivision (a)(1)]. Attorney for Cardinale did not obey the Court's order when she filed the Second Amended Cross-Complaint on December 12, 2016. The Second Amended Cross-Complaint omits the two claims that were in the First Amended Cross-Complaint, and includes three new claims against Cross-Defendant Bush." The court granted leave for Cardinale to file a third amended cross-complaint that complied with the court's October 27, 2016 order, but Cardinale decided not to do so. (*Bush v. Cardinale*, *supra*, 2021 Cal.App.Unpub.LEXIS 5235, at p. *4, fn. 4.)[3]

As to the demurrer, which challenged the SACC on statute of limitations and other grounds, the court ultimately "dropped" it because it was moot in light of the court's granting of the motion to strike, and because Bush's counsel failed to meet and confer before filing the demurrer.

## D. *The Court's Order Imposing Sanctions*

While the demurrer and motion to strike were pending, Bush served and then filed a motion seeking sanctions under sections 128.7 and 177.5 against Cardinale and her attorney, Voisenat, for filing the SACC. Bush argued the SACC had been filed in violation of the court's October 27, 2016 order, was legally and factually unsupported in various respects, and

---

[3] "After striking Cardinale's second amended cross-complaint, the court denied a motion by Bush to take the further step of entering a pretrial *dismissal* of that pleading. (See Code Civ. Proc., § 581, subds. (a)(2), (5), (f)(4) [court 'may' dismiss cross-complaint if (1) it strikes the pleading with leave to amend and the cross-complainant does not amend, *and* (2) either party moves for dismissal].) Stating that dismissal was 'unnecessary' since Cardinale had decided not to file a third amended cross-complaint, the court stated that, rather than exercise its discretion to dismiss the second amended cross-complaint, it would enter a single judgment at the conclusion of trial." (*Bush v. Cardinale*, *supra*, 2021 Cal.App.Unpub.LEXIS 5235, at p. *4, fn. 4.)

6

was filed for an improper purpose.  Bush asked the court to award her $6,495.60 in sanctions, reflecting attorney fees and costs incurred in preparing the documents Bush filed in response to the SACC—the motion to strike, the demurrer, and the motion for sanctions.

Voisenat, as Cardinale's attorney, filed a brief in opposition to the sanctions motion.  The opposition argued the SACC complied with the court's prior order, was well-grounded in fact and law, and was not presented for an improper purpose.  The opposition also asked the court to impose $6,440 in sanctions on Bush and her counsel on the ground that Bush's sanctions motion was itself baseless.  The body of the opposition brief included 17 pages of text, in excess of the 15-page limit for an opening or responding memorandum set forth in California Rules of Court,[4] rule 3.1113(d), a fact Bush pointed out in her reply brief.

The court held a hearing on Bush's sanctions motion on July 20, 2017, and entered a minute order granting the motion in part on July 21, 2017.[5] The court imposed sanctions on Voisenat only, in the amount of $2,000 payable to Bush, and stated Voisenat "did not have the legal or factual justification to file the [SACC] without filing a Motion for Leave to Amend." The court noted that it had informed Voisenat of this obligation in its October 27, 2016 order (and that the court had stricken the SACC because it was filed in violation of that order).  The court stated it was treating the sanctions motion as "unopposed" because Voisenat did not seek leave of court to file an opposition memorandum in excess of the applicable 15-page limit.

---

[4] Undesignated rule references are to the California Rules of Court.

[5] Voisenat, the appellant in this appeal, did not designate for inclusion in the appellate record a reporter's transcript or other record of the oral proceedings at the July 20, 2017 hearing (or any other trial court hearing).

7

The minute order also states, however, that the court's tentative ruling on sanctions was "contested" and that "[t]he matter was argued" at the hearing.

The court entered a formal written order awarding the $2,000 in sanctions on January 29, 2019.[6] The January 29 order directed Voisenat to pay the sanctions by March 1, 2019.

### E. *Voisenat's First Appeal of the Sanctions Order (No. A157658)*

On May 10, 2019 (prior to the August 2019 trial and judgment, which we discuss in pt. I.F., *post*), Voisenat filed a notice of appeal challenging the court's January 29, 2019 sanctions order;[7] the notice of appeal initiated appeal No. A157658.[8] The notice of appeal was lodged with this court on July 2, 2019, and on the same date, this court sent Voisenat a notice under rule 8.100(c) advising she had not paid the required filing fee.

On August 12, 2019, Bush filed two motions in this court: (1) a motion to dismiss Voisenat's appeal of the $2,000 sanctions award on the ground it was premature under section 904.1, subdivision (b) and therefore this court lacked jurisdiction,[9] and (2) a motion asking this court to impose sanctions on Voisenat for filing an appeal she knew was premature (as shown by statements she had made in papers filed in the trial court).

---

[6] The extended interval between the July 2017 minute order and the January 2019 order resulted from delay by Bush's counsel in submitting a proposed order as the court had directed in its July 2017 minute order.

[7] Voisenat sought unsuccessfully to obtain a trial court order staying the sanctions order pending appeal.

[8] We granted Bush's request (filed in the present appeal) that we take judicial notice of this court's docket and file in appeal No. A157658.

[9] Section 904.1, subdivision (b) states: "Sanction orders or judgments of five thousand dollars ($5,000) or less against a party or an attorney for a party may be reviewed on an appeal by that party *after entry of final judgment in the main action*, or, at the discretion of the court of appeal, may be reviewed upon petition for an extraordinary writ." (Italics added.)

This court did not have occasion to address Bush's motions. Instead, also on August 12, 2019, this court dismissed the appeal because Voisenat, despite receiving a default notice more than one month earlier, had not paid the required filing fee. (See rule 8.100(b)(1), (c).) This court's dismissal order states: "Appellant having failed to pay the statutory filing fee in compliance with rule 8.100(b)(1) of the California Rules of Court, after notice having been given pursuant to rule 8.100(c)(1), the appeal filed on May 10, 2019 is dismissed." The remittitur issued on October 23, 2019.

## F. *The Entry of Judgment in the Trial Court*

In the trial court, the case proceeded to a jury trial in August 2019 that resulted in a special verdict and then a judgment on August 30, 2019. (See *Bush v. Cardinale, supra*, 2021 Cal.App.Unpub.LEXIS 5235, at p. *4.) The jury found Bush had not proved her claims against Cardinale, and the verdict and judgment did not award relief to any party. (*Ibid*.) The court declined a request by Bush to include in the judgment the sanctions award against Voisenat.[10]

## G. *The Present Appeal*

On October 28, 2019, Voisenat filed a notice of appeal again challenging the January 29, 2019 sanctions order; this notice of appeal initiated the present appeal, No. A158757. After the filing of the notice of appeal but before Voisenat designated the record and before the parties submitted their

---

[10] In a separate appeal filed by Cardinale (No. A159689), we affirmed the trial court's postjudgment order declining to award prevailing-party attorney fees to Cardinale. (*Bush v. Cardinale*, *supra*, 2021 Cal.App.Unpub. LEXIS 5235, at pp. *1, *4–*5.) We also denied a motion by Bush seeking sanctions on the ground Cardinale's appeal was frivolous. (*Id.* at pp. *1, *16–*17.)

9

briefs on the merits,[11] Bush filed several motions in this appeal, including one that is relevant here.  In March 2020, Bush filed a motion to dismiss this appeal on the ground that, under section 913, this court's dismissal of Voisenat's first appeal of the sanctions order was a dismissal with prejudice that barred a second appeal of that order.

Voisenat opposed the motion to dismiss, arguing her first appeal of the sanctions order was premature and that this court never had jurisdiction of that appeal and thus could not have dismissed it with prejudice.  Bush filed a reply.  On November 18, 2020, this court filed an order denying the motion to dismiss without elaboration (stating simply that "[Bush's] motion to dismiss this appeal is denied").[12]

## II. DISCUSSION

### A. *The Dismissed Appeal*

In her respondent's brief on the merits, Bush argues (as she did in her March 2020 motion to dismiss) that, as a result of the dismissal of Voisenat's prior appeal of the sanctions order, this court lacks jurisdiction to hear (and Voisenat is barred from bringing) the present appeal of that order.  We disagree and will reach the merits of this appeal.

---

[11] Although Voisenat filed her notice of appeal in October 2019, she did not file her notice designating the appellate record until June 2021.  That notice (initially filed in the superior court) was filed in this court in August 2021, and briefing commenced at that point.

[12] In the November 18, 2020 order, this court also denied a motion filed by Bush seeking sanctions against Voisenat, in part for her filing a second appeal of the trial court's sanctions order.  In a later set of filings in June and July 2021, Bush brought additional motions—a motion to dismiss this appeal as a sanction for Voisenat's failure to designate the record, as well as a motion for calendar preference.  This court denied those motions in an order issued on July 14, 2021.

We initially reject Voisenat's contention in her reply brief (in response to Bush's renewed dismissal request) that the order denying Bush's prior motion establishes a "final" denial that precludes our considering now whether to dismiss the appeal on the ground urged by Bush.  A summary denial of a motion to dismiss an appeal does not preclude "later full consideration of the issue, accompanied by a written opinion, following review of the entire record . . . ."  (*Kowis v. Howard* (1992) 3 Cal.4th 888, 900.)  The November 18, 2020 order denying Bush's prior dismissal motion without elaboration does not preclude our consideration of Bush's argument that this appeal is barred by our dismissal of Voisenat's previous appeal.

As to the substance of that question, Bush relies on section 913, which states:  "The dismissal of an appeal shall be with prejudice to the right to file another appeal within the time permitted, unless the dismissal is expressly made without prejudice to another appeal."  As Bush notes, this court's August 12, 2019 order dismissing Voisenat's first appeal of the sanctions order does not expressly say it is without prejudice; the order states only that, as a result of Voisenat's failure to pay the filing fee, the appeal is "dismissed."

In general, if an order dismissing an appeal does not say it is without prejudice, then by operation of law under section 913 it is *with* prejudice. (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 100.)  A dismissal with prejudice has the effect of affirming the appealed judgment or order, and the appellant therefore is barred from challenging the judgment or order in a later appeal. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 413 ["Normally the involuntary dismissal of an appeal leaves the judgment intact."]; *Estate of Sapp*, *supra*, at p. 100; *Linn v. Weinraub* (1948) 8 Cal.App.2d 109, 110 ["As the effect of the

11

order of dismissal herein was affirmance of the judgment, no second appeal from the same judgment can be maintained."].)

But the statutory bar to a second appeal does not arise from the dismissal of an initial appeal that could not have proceeded on the merits, such as an appeal from a nonappealable order or a premature appeal. (*King v. Goldberg* (1958) 159 Cal.App.2d 543, 547–548 [predecessor statute to section 913 did not apply where first appeal was taken from a nonappealable order]; 9 Witkin, Cal. Procedure (6th ed. 2022) Appeal, § 790 [general rule that dismissal of appeal operates as affirmance is subject to an exception: "Where the appeal is void, e.g., because taken prematurely, it does not deprive the trial court of jurisdiction over the judgment and does not give the appellate court jurisdiction to affirm it." (Citing *Estate of Kennedy* (1900) 129 Cal. 384, 385.)].)

Here, Voisenat's first appeal of the sanctions order—an appeal filed several months before entry of judgment—was premature under section 904.1, subdivision (b). As noted, that statute provides that an order imposing sanctions of $5,000 or less "may be reviewed on an appeal by [the sanctioned party] *after entry of final judgment in the main action*, or, at the discretion of the court of appeal, may be reviewed upon petition for an extraordinary writ."[13] (§ 904.1, subd. (b), italics added.) Because the dismissed appeal was premature, we conclude Voisenat is not precluded by section 913 from obtaining postjudgment review of the sanctions order.

---

[13] Voisenat did not file a writ petition, nor did this court treat her prior appeal as a writ petition.

**B. *Standard of Review***

The court awarded sanctions under section 128.7,[14] which requires that all pleadings filed with the court be signed by an attorney of a represented party, or, if the party is not represented by counsel, by the party. (§ 128.7, subd. (a).) "The signing of a filed pleading constitutes a certification by the person signing it that after a reasonable inquiry, the pleading (1) is not being presented for an improper purpose; (2) contains positions that are not frivolous; (3) alleges factual matter having evidentiary support; and (4) contains denials of factual allegations, which denials have evidentiary support. (§ 128.7, subd. (b).)" (*Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 919 (*Optimal Markets*).)[15] "Based upon these

[14] In addition to section 128.7, Bush's motion for sanctions relied on section 177.5, which authorizes the imposition of up to $1,500 in sanctions, payable to the court, for violation of a court order under certain circumstances. But it is clear the court made its award under section 128.7. The court's minute order granting the motion is titled "Motion for CCP 128.7 Sanctions Granted" (although this title is not carried over into the later written order submitted by Bush's counsel). And as the parties recognize in their appellate briefs, the court's award of $2,000 in sanctions payable to Bush is not an award that could be made under section 177.5.

[15] Section 128.7, subdivision (b) states: "By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, petition, written notice of motion, or other similar paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met: [¶] (1) It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. [¶] (2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. [¶] (3) The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a

13

requirements, the court, after proper statutory notice, may impose sanctions upon the attorneys, law firms, or parties who have improperly certified a pleading in violation of subdivision (b) of section 128.7.  (§ 128.7, subd. (c).)" (*Optimal Markets, supra,* at pp. 919–920.)[16]

A party moving for sanctions under section 128.7 must comply with that statute's " 'safe-harbor' provision."  (*Optimal Markets, supra,* 221 Cal.App.4th at p. 920.)  The party seeking sanctions must serve a notice of motion for sanctions on the offending party at least 21 days before filing

reasonable opportunity for further investigation or discovery.  [¶] (4) The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief."

[16] Section 128.7, subdivision (c) provides:  "If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.  In determining what sanctions, if any, should be ordered, the court shall consider whether a party seeking sanctions has exercised due diligence.  [¶] (1) A motion for sanctions under this section shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b).  Notice of motion shall be served as provided in Section 1010, but shall not be filed with or presented to the court unless, within 21 days after service of the motion, or any other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.  If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.  Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.  [¶] (2) On its own motion, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b), unless, within 21 days of service of the order to show cause, the challenged paper, claim, defense, contention, allegation, or denial is withdrawn or appropriately corrected."

the motion with the court, which describes the sanctionable conduct.
(§ 128.7, subd. (c)(1).) If the pleading is withdrawn during the 21-day safe-harbor period, the motion for sanctions may not be filed with the court. (*Ibid.*)[17] Failure to comply with this procedure precludes an award of sanctions. (*Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 700 ["Adequate notice prior to the imposition of sanctions is not only mandated by statute, but also by the due process clauses of the state and federal Constitutions. [Citation.] The notice requirements of section 128.7, subdivision (c)(1) were therefore mandatory, and neither the parties nor the trial court in this matter were permitted to disregard them."].)

We ordinarily review a ruling on a motion for section 128.7 sanctions under the deferential abuse of discretion standard. (*Optimal Markets*, *supra*, 221 Cal.App.4th at p. 921.) We review de novo questions of statutory interpretation that arise during our review of a discretionary sanctions ruling (*ibid.*), as well as the question whether the sanctions order violates due process. (*People v. Landers* (2019) 31 Cal.App.5th 288, 304; *ibid*. [" ' "Inherent in our review of the exercise of discretion in imposing monetary sanctions is a consideration of whether the court's imposition of sanctions was a violation of due process." ' "].) An appealed trial court order is presumed to be correct, and an appellant seeking to overcome that presumption must provide an adequate record to show error. (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435.)

C. *Due Process*

Voisenat contends the court's sanctions order violated her due process rights because (1) the court disregarded her memorandum in opposition to

---

[17] The court must follow a similar procedure before imposing sanctions on its own motion. (§ 128.7, subd. (c)(2).)

the sanctions motion, and (2) there were defects in the process by which the final sanctions order was entered. We disagree.

"Due process requires 'notice, an opportunity to respond, and a hearing.' (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 654.) The purpose of due process is to provide affected persons with the right to be heard ' "at a meaningful time and in a meaningful manner." ' [Citation.] When sanctions are at issue, due process can be satisfied if the court gives a clear warning identifying the anticipated grounds for the sanctions or if those grounds are identified by the opposing party, and the court provides counsel with an opportunity to respond at least orally." (*Shenefield v. Shenefield* (2022) 75 Cal.App.5th 619, 631–632.)

These requirements were met here. As to notice, the court imposed sanctions on the ground that Voisenat "did not have the legal or factual justification" to file the SACC without first filing a motion for leave to amend. Voisenat had notice of this anticipated ground for sanctions, which Bush identified in her moving papers in support of the sanctions motion. And Bush complied with the safe-harbor provision in section 128.7, subdivision (c) by serving the sanctions motion on Voisenat in January 2017 and giving her an opportunity to withdraw the SACC before Bush filed the motion in late February 2017. Finally, before imposing sanctions, the court held a hearing on the motion on July 20, 2017.

Contrary to Voisenat's assertion, the record does not show the court refused to permit oral argument at the hearing. The court's July 2017 minute order states that, at the hearing, Voisenat "contested" the court's tentative ruling granting sanctions and that "[t]he matter was argued and submitted." Similarly, the court's final order issued in January 2019 states that Voisenat "contested" the tentative ruling and that the court "heard and

16

considered the argument of counsel." As Voisenat points out, the orders state the court treated the sanctions motion as "unopposed" because Voisenat filed an overlength opposition brief without obtaining leave of court to do so. But the rule cited by the court on this point (rule 3.1113, which we discuss further below) governs *written* memoranda, suggesting the court only disregarded the opposition brief itself. In light of the court's express statement that oral argument occurred, we will not presume the court disallowed it.[18]

As to the court's decision to disregard Voisenat's *written* opposition memorandum, that approach was authorized by the rules of court and did not violate due process. Rule 3.1113, cited by the court, states that (with exceptions not relevant here) an opening or responding memorandum may not exceed 15 pages (rule 3.1113(d)), while authorizing a party to apply for permission to file a longer memorandum (rule 3.1113(e)). Voisenat, without seeking permission, filed an opposition brief that included 17 pages of text. Rule 3.1113(g) states: "A memorandum that exceeds the page limits of these rules must be filed and considered in the same manner as a *late-filed* paper." (Italics added.) This provision authorizes the court, in its discretion, to refuse to consider the memorandum in ruling on the motion. (Rule 3.1300(d) [court has discretion to refuse to consider a late-filed paper; if the court does so, "the minutes or order must so indicate"]; Edmon & Karnow, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2022) ¶ 9:64.17 [rule 3.1113(g) confers the same discretion to disregard an overlength memorandum].)

---

[18] As noted, Voisenat did not designate for inclusion in the appellate record a reporter's transcript or other record of the oral proceedings at the July 20, 2017 hearing. It was her responsibility as appellant to provide an adequate record to support her claims of error. (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1002.)

Voisenat argues the court's decision to disregard her opposition brief was itself a "sanction" that the court could only impose if it followed formal procedural requirements described in rule 2.30. We disagree. Rule 2.30 authorizes monetary sanctions for violations of certain provisions of the California Rules of Court and sets forth procedures for imposition of those monetary sanctions. (Rule 2.30(a), (b), (c), (e).) Rule 2.30(b) provides in part: "In addition to any other sanctions permitted by law, the court may order a person, after written notice and an opportunity to be heard, to pay reasonable monetary sanctions to the court or an aggrieved person, or both, for failure without good cause to comply with the applicable rules," i.e., certain provisions of the California Rules of Court, including those applicable to general civil cases (see rule 2.30(a)). Rule 2.30(c) and (e) set forth the procedures (including notice and an opportunity to be heard) that must be followed before the court imposes sanctions under rule 2.30.[19]

Here, the court did not impose monetary sanctions under rule 2.30 for violation of the California Rules of Court, so the procedures set forth in rule 2.30 for imposing such sanctions did not apply. The court just exercised

_____

[19] Rule 2.30(c) states: "Sanctions must not be imposed under this rule except on noticed motion by the party seeking sanctions or on the court's own motion after the court has provided notice and an opportunity to be heard. A party's motion for sanctions must (1) state the applicable rule that has been violated, (2) describe the specific conduct that is alleged to have violated the rule, and (3) identify the attorney, law firm, party, witness, or other person against whom sanctions are sought. The court on its own motion may issue an order to show cause that must (1) state the applicable rule that has been violated, (2) describe the specific conduct that appears to have violated the rule, and (3) direct the attorney, law firm, party, witness, or other person to show cause why sanctions should not be imposed against them for violation of the rule." Rule 2.30(e) states: "An order imposing sanctions must be in writing and must recite in detail the conduct or circumstances justifying the order."

18

its discretion under rule 3.1113 to disregard Voisenat's overlength brief. As discussed, the court then imposed monetary sanctions under section 128.7 for Voisenat's filing of the SACC with several new causes of action without filing a motion for leave to amend.

None of this violated due process. Voisenat had the opportunity to respond to the sanctions motion itself both orally (at the July 20, 2017 hearing) and in writing (by filing an opposition brief that complied with the rules of court). When she instead filed a noncompliant brief, the court had discretion to disregard it (whether or not Bush had flagged the issue in her reply brief). We reject Voisenat's suggestion that a court adjudicating a motion (for sanctions or otherwise) must hold a hearing on the interim procedural question whether to consider an overlength brief supporting or opposing the motion. Finally, and in any event, Voisenat did have an opportunity to argue that point—at the July 20, 2017 hearing on the sanctions motion, Voisenat was free to argue the court should consider her noncompliant brief, as well as arguing the merits of the motion.

Voisenat next argues her due process rights were violated as a result of the process by which the court's July 2017 minute order imposing sanctions was converted to a final order filed in January 2019. Voisenat suggests that, because Bush's counsel delayed in preparing the proposed order and purportedly included terms that differed from those in the minute order, the court violated due process by signing the order without providing Voisenat an opportunity to be heard. Again, we disagree.

In the July 21, 2017 minute order, the court, citing rule 3.1312, directed Bush's counsel to "prepare the Proposed Order and submit it for the Court's consideration." As Voisenat notes, rule 3.1312 requires a prevailing party to serve a proposed order on the other parties within five days of the

19

ruling; within five days after service, the other parties must approve the proposed order or state reasons for their disapproval; and the prevailing party must then transmit the proposed order to the court "together with a summary of any responses of the other parties or a statement that no responses were received." (Rule 3.1312(a)–(b).) Instead of following this schedule, Bush's counsel did not serve or file a proposed order until 18 months later, in January 2019 (as a result, he says, of inadvertence).

We do not condone the extended delay by Bush's counsel. But counsel's neglect did not undercut the court's authority to impose on Voisenat the sanctions it had previously determined were warranted, and the delay itself provides no basis to disturb the court's order. Nor was Voisenat powerless to avoid the delay. Rule 3.1312(d) provides that, "[i]f the prevailing party fails to prepare and submit a proposed order as required by [rule 3.1312(a) and (b)], any other party may do so." Voisenat did not avail herself of this option to move the process along.

Voisenat asserts that, when Bush's counsel did submit the proposed order in January 2019, the court signed it without giving Voisenat "notice or an opportunity to be heard." But it is not clear what Voisenat is arguing should have occurred. As with her claim pertaining to the overlength brief, we reject any suggestion that another hearing—this time on the finalization of the proposed order—was required. If her quibble is a more granular one concerning an alleged failure by Bush to adequately summarize Voisenat's objections when submitting the proposed order to the court (see rule 3.1312(b)), we will not develop the specifics of this argument for her or parse the record to determine whether there were shortcomings on this point.

In any event, we reject Voisenat's suggestion that there are significant differences between the court's July 2017 minute order and the order later

20

submitted by Bush's counsel and signed by the court—differences that Voisenat suggests required more exhaustive procedural steps before the order could be finalized. Both orders contain (1) the court's ruling that, in light of the court's October 27, 2016 order, Voisenat had no legal or factual basis to file the SACC without first filing a motion for leave to amend, (2) an award of $2,000 in sanctions (less than one-third the amount requested by Bush), and (3) a statement disregarding Voisenat's overlength opposition brief.[20] While there is some minor rewording and reordering of the language in the two orders, that does not rise to the level of a due process violation.

The specific actual or alleged differences identified by Voisenat also provide no basis for reversal. Voisenat asserts the final order adds a statement that the motion was argued, but the minute order also states the matter was argued. Voisenat is correct that Bush's proposed order includes a blank for a payment deadline (while the minute order does not include a deadline), but we do not view that as a significant, substantive change; we also note the deadline filled in by the court—March 1, 2019—gave Voisenat more than one month to pay (and more than one year since the court initially ruled sanctions were warranted).[21]

---

[20] While the minute order cites rule 3.1113(d), (e), and (g) on this point (provisions we have discussed above that govern overlength briefs), the final order also states the brief did not contain a table of authorities or a written summary of argument as required by rule 3.1113(f). In our view, that is not a material change that affects the propriety of the court's sanctions order or violates due process.

[21] Because we find no due process violation, we need not address Voisenat's argument that this purported error was prejudicial.

21

**D.** *The Court Did Not Abuse Its Discretion by Imposing Sanctions*

Voisenat argues (partly indirectly as part of her argument that the purported due process violations were prejudicial) that the court erred in imposing sanctions under section 128.7.  We disagree.

Under section 128.7, subdivision (b)(2), Voisenat, by signing and filing the SACC, was "certifying that to the best of [her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," "[t]he claims, defenses, and other legal contentions [in the SACC] are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." The existing law governing the permissible scope of the SACC included the trial court's October 27, 2016 order directing that no new causes of action could be included unless Voisenat (on behalf of Cardinale) first moved for (and obtained) leave to include them, as well as the legal rule the court applied in issuing that directive.  (E.g., *Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1023 ["Following an order sustaining a demurrer or a motion for judgment on the pleadings with leave to amend, the plaintiff may amend his or her complaint only as authorized by the court's order.  [Citation.]  The plaintiff may not amend the complaint to add a new cause of action without having obtained permission to do so, unless the new cause of action is within the scope of the order granting leave to amend."].)

Despite the court's express instructions, Voisenat, without filing a motion for leave, included in the SACC three new causes of action that had not appeared in the prior cross-complaints—claims for setoff based on "fraud and deceit," "negligent misrepresentation," and "breach of fiduciary duty." The court's decision to sanction Voisenat under section 128.7 was not an abuse of discretion.

Voisenat's arguments to the contrary are not persuasive. First, contrary to Voisenat's assertion, the court's sanctions order, as required by section 128.7, subdivision (e), describes the conduct by Voisenat that the court determined to be sanctionable. The sanctions order states that, in light of the directions in the court's October 27, 2016 order, Voisenat did not have the legal or factual justification to file the SACC without first filing a motion for leave to amend.

Voisenat next argues it was proper to file the SACC because the court, in its October 27, 2016 order, granted her leave to amend, and because the claims she included in the SACC were not new. We are not persuaded. As noted, in the October 27, 2016 order granting judgment on the pleadings as to the first amended cross-complaint, the court granted leave to amend but expressly limited the scope of that leave, specifying no new claims could be included in the SACC unless Voisenat first filed a motion for leave to do so. And, as the court correctly concluded in its order granting Bush's motion to strike the SACC, the claims in the SACC were new.

The first amended cross-complaint included two causes of action for setoff based on breach of contract. As the court noted in granting the motion to strike, the SACC omitted those two claims and added the three new claims listed above—setoff based on fraud, negligent misrepresentation, and breach of fiduciary duty. Voisenat does not, and could not, contend that a claim for fraud, negligent misrepresentation, or breach of fiduciary duty (either in the abstract or as pleaded in the SACC) is the same as a claim for breach of contract. Moreover, the court in its October 27, 2016 order expressly denied the request Voisenat had made (in her opposition to the motion for judgment on the pleadings) to amend to add such claims, requiring instead that she file a separate motion for leave to do so. We reject Voisenat's suggestion that,

23

because the court previously permitted her to include a setoff claim in the first amended cross-complaint, she had leave to add new and different setoff claims, based on different legal theories, in the SACC.[22]

We have considered Voisenat's remaining arguments and find no basis for reversal.

### III. DISPOSITION

The trial court's January 29, 2019 order awarding $2,000 in sanctions against Voisenat and in favor of Bush is affirmed.  Bush shall recover her costs on appeal.

STREETER, J.

WE CONCUR:

POLLAK, P. J.
GOLDMAN, J.

---

[22] Because we affirm on the grounds stated in the text, we need not address Bush's arguments that the court's order could be affirmed on other grounds as well.